**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| *Plaintiff,* | **Case No. 1:25-cv-02716-GLR** |
| **v.** | |
| **KEY INVESTMENT GROUP LLC, et al.,** | |
| *Defendants.* | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO MOTION FOR LEAVE TO FILE BRIEF AS AMICI CURAE**

**Table of Contents**

INTRODUCTION .............................................................................................................................. 1

LEGAL STANDARDS ..................................................................................................................... 2

ARGUMENT ..................................................................................................................................... 3

I.   Proposed Amici's Motion Does Not Provide an Adequate Basis for the Court's Consideration
     of the Proposed Amicus Brief ............................................................................................... 3

II.  The Court Should Reject the Arguments Contained in the Proposed Amicus Brief ................. 6

     a.   Sections I and II of the Proposed Amicus Brief Inappropriately Contain New Legal
          Arguments, And Are Otherwise Duplicative ................................................................ 6

     b.   Section III of the Proposed Amicus Brief Misrepresents Both the BOTS Act's
          Legislative History and Proposed Amici's Prior Positions ........................................... 7

     c.   Section IV of the Proposed Amicus Brief Inappropriately Introduces Non-Judicially
          Noticeable Documents in Order to Make a Public Policy Argument Inappropriate for
          a Motion to Dismiss ..................................................................................................... 9

CONCLUSION ................................................................................................................................. 11

**Table of Cases**

*Accordius Health at Asheville, LLC v. United States Small Bus. Admin.*,
   2024 WL 2151707 (W.D.N.C. May 1, 2024) ..............................................................2

*Alliance for the Wild Rockies v. Anderson*,
   780 F. Supp. 3d 1075 (D. Mont. 2025)......................................................................7

*Blanchette v. Conn. Gen. Ins. Corps.*,
   419 U.S. 102 (1974)....................................................................................................4, 7

*Famulus Health LLC v. GoodRX, Inc.*,
   2024 WL 4151090 (D.S.C. Sept. 11, 2024)...............................................................6

*Finkle v. Howard Cnty., Maryland*,
   12 F. Supp. 3d 780 (D. Md. 2014) ............................................................................3

*Kent v. Maryland Transp. Auth.*,
   2006 WL 3931648 (D. Md. Dec. 21, 2006), *aff'd*, 232 F. App'x 290 (4th Cir. 2007) ..............5

*Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*,
   2009 WL 2606254 (E.D. Va. Aug. 20, 2009)............................................................8

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)....................................................................................................4, 5

*Snyder v. Phelps*,
   580 F.3d 206 (4th Cir. 2009) .....................................................................................6

*Tafas v. Dudas*,
   511 F. Supp. 2d 652 (E.D. Va. 2007) .......................................................................6

*U.S. v. Yaroshenko*,
   86 F.Supp.3d 289 (S.D.N.Y. 2015) .........................................................................10

*United States ex rel. Dugan v. ADT Sec. Servs., Inc.*,
   2008 WL 11509757 (D. Md. Sept. 24, 2008).........................................................3

**INTRODUCTION**

The Motion to File an Amicus Brief (the "Motion") of Proposed Amici Senators Marsha Blackburn and Ben Ray Luján (together, "Proposed Amici") should be denied. Proposed Amici claim the Motion is "desirable" for two reasons. Motion, 2. Both are meritless.

*First*, Proposed Amici posit they "can clarify the legislative intent animating the statute[] . . . and the intended conduct that the legislation targeted." *Id.* This purported basis both mischaracterizes the extent to which Proposed Amici participated in the drafting and the debate over what would become the BOTS Act. At the same time, Proposed Amici attempt to mind-read the intent of the 114th Congress, which passed the relevant legislation over a decade ago, and which Supreme Court precedent explicitly disallows.

*Second*, Proposed Amici claim to "provide perspectives on how bulk-buying and scalping operations . . . harm[] the economies and constituents of their respective states." *Id.* But the "perspectives" Proposed Amici wish to provide are not their own. Instead, Proposed Amici cite, quote, and otherwise rely on partisan third-party studies and purported analyses which are largely written by trade associations and interest groups explicitly opposed to the secondary-ticketing market. These external materials have no place in deciding Defendants' Motion to Dismiss. Proposed Amici have no legitimate basis to sneak them in.

The merits of the Proposed Amicus Brief are also lacking. Sections I and II of the Amicus Brief provide new legal arguments, or otherwise rehash arguments already made by Plaintiff.[1] But novel legal arguments are inappropriate in an amicus brief. It is the parties who are responsible for arguing the legal merits of a case, not amici. This is especially true here, where Plaintiff the Federal

---

[1] Defendants will not address the Proposed Amicus Brief's spurious arguments, as they are not properly before the Court.

Trade Commission is the one entity specifically tasked with enforcing the BOTS Act. *See* 15 U.S.C. § 45c(b)(2)(A).

Section III of the Brief of Amici Curiae Senator Marsha Blackburn and Senator Ben Ray Luján in Support of the Federal Trade Commission's Opposition to Defendants' Motion to Dismiss ("Proposed Amicus Brief") fares no better. In this section, Proposed Amici literally attempt to rewrite their way into the legislative history, while also attempting to speak for an entire legislative body. To add insult to injury, the Proposed Amicus Brief ignores or misleadingly quotes multiple sources for the unwarranted proposition that the BOTS Act was meant to extend to activity broader than bots, even though both Proposed Amici are on the record as stating the BOTS Act was specifically meant to address bots.

Section IV of the Proposed Amicus Brief contains a purported public policy argument, based wholly on partisan third-party sources not referenced in Plaintiff's Complaint or otherwise captured in the record.[2]

The Court should deny leave to file the Proposed Amicus Brief because the Motion is fatally flawed. The Proposed Amicus Brief itself is misleading, and contains otherwise inappropriate arguments. The Motion should be denied.

### LEGAL STANDARDS

"Since an amicus does not represent the parties but participates only for the benefit of the court, it is solely within the discretion of the court to determine the fact, extent, and manner of participation by the amicus." *Accordius Health at Asheville, LLC v. United States Small Bus. Admin.*, 2024 WL 2151707 (W.D.N.C. May 1, 2024) (citation omitted). "An amicus brief [] should

---

[2] Proposed Amici have not even requested that the Court take judicial notice of such materials. This is likely because they recognize that judicial notice of such partisan studies on a Motion to Dismiss is inappropriate.

be filed timely and should not merely repeat positions taken by the parties." *United States ex rel. Dugan v. ADT Sec. Servs., Inc.*, 2008 WL 11509757, at *3 (D. Md. Sept. 24, 2008) (italics omitted). If the Court does not find the "proffered information timely and useful, [the motion] should not be granted." *Finkle v. Howard Cnty., Maryland*, 12 F. Supp. 3d 780, 783 (D. Md. 2014) (cleaned up).

**ARGUMENT**

**I.      Proposed Amici's Motion Does Not Provide an Adequate Basis for the Court's Consideration of the Proposed Amicus Brief**

In their Motion, Proposed Amici argue the Proposed Amicus Brief is appropriate for consideration as it "can clarify the legislative intent animating the statute's use of the word 'circumvent' and the intended conduct that the legislation targeted." Motion, 2. Not so. Proposed Amici—who were both Representatives (not Senators) when the BOTS Act was adopted—cannot speak for the entirety of the 114th Congress, nor can they speak for the Senators (not Representatives) who drafted and debated the Bill that ultimately became the BOTS Act.

The Motion asserts that Senator Luján's view of the legislative history should be considered because he was one of 535 members of the House of Representative "who voted in favor of the BOTS Act." Motion, 1. Then-Representative Luján is not mentioned in the legislative history of the BOTS Act, and even the Motion concedes that his only tie to the BOTS Act was that he voted for it. This does not give him any unique insight "in the proper interpretation and application of the law." *Id.*

The Motion contends that then-Representative Blackburn has special knowledge in the interpretation of the law because she was "the lead Republican sponsor and a primary architect" of the BOTS Act. *Id.* This statement is misleading at best. While Representative Blackburn drafted and introduced a Bill titled the BOTS Act, ***that Bill died in Committee***. *See* H.R. 708, 114th Cong.. (2015), https://www.congress.gov/bill/114th-congress/house-bill/708. It was *another* Bill, drafted,

introduced, and debated in the Senate, that ultimately became the BOTS Act that was adopted. *See* S.R. 3183, 114th Cong. (as signed into law by the President, December 14, 2016), https://www.congress.gov/bill/114th-congress/senate-bill/3183/all-actions.

The legislative record demonstrates that Senator Jerry Moran—and not then-Representative Blackburn—was "the lead Republican sponsor of the Bill" that was adopted. Motion, 1. *See* S.R. 3183, 114th Cong. (as signed into law by the President, December 14, 2016), https://www.congress.gov/bill/114th-congress/senate-bill/3183/cosponsors.   Indeed, the one substantive reference to then Representative-Blackburn in the legislative history of the Bots Act was a "commend[ation to] Representative Blackburn on [her] efforts to ***enact a federal anti-bot bill***." 2016 WL 4773371 (emphasis added). This language from the legislative history of the BOTS Act that was adopted strongly indicates that, contrary to her current position, then-Representative Blackburn believed that the BOTS Act was about bots.

Even if then Representatives-Luján and Blackburn had been involved in the final version of the BOTS Act's drafting and debate—the legislative history indicates they were not—it is settled law that individual (or even collective) legislators cannot offer post-hoc rationales or explanations for a statute adopted a decade ago.

"Post-passage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 132 (1974) (cautioning against reliance on "an amicus brief filed . . . on behalf of 36 Congressmen" as a post-enactment statement). Indeed, "[i]nterpretation of the meaning of statutes, as applied to justiciable controversies [is] exclusively a judicial function." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 370 (2024). Judges are "expected to apply their

4

judgment independent of the political branches when interpreting the laws [other] branches enact." *Id.* at 412.

Because statutory analysis cannot turn on post-enactment statements—and because, even if they could (to be sure, they cannot)—Proposed Amici were not integrally involved in drafting or debating the Bill that became the BOTS Act, they cannot "clarify the legislative intent animating the statute's use of the word 'circumvent' and the intended conducted that the legislation targeted." Motion, 2. Proposed Amici have no special standing or knowledge to "assist the Court as it evaluates the breadth of Congress's mandate to the FTC for enforcement in this area." *Id.* As such, the Proposed Amicus Brief is of negligible worth.

Proposed Amici also offer that Section IV of the Proposed Amicus Brief "provide[s] perspectives on how bulk-buying and scalping operations siphon wealth from creators and consumers and impede access to live events, thereby harming the economies and constituents of their respective states." Motion, 2. This purported basis has at least two fundamental flaws.

***First***, the Proposed Amici's "perspectives" are not their own. Instead, they attempt to cram a plethora of biased third-party studies and papers into the record. The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Kent v. Maryland Transp. Auth.*, 2006 WL 3931648, at *2 (D. Md. Dec. 21, 2006), *aff'd*, 232 F. App'x 290 (4th Cir. 2007). There is no place for unsubstantiated third-party studies and other contestable fact-based materials in deciding a motion to dismiss, especially where, as here, Proposed Amici have not even requested that the Court take judicial notice of such one-sided papers.

***Second***, and as alluded to above, Proposed Amici provide no basis as to why ***they*** are uniquely suited to provide an amicus brief providing "perspectives" of third-parties they have no substantive relationship to. The fact that Senator Blackburn comes from Tennessee, which has "a

vibrant creative economy [purportedly] uniquely susceptible to the harms of predatory ticket-scalping practices," Motion, 1, does not make her an expert on those practices.

Because the Motion fails to assert a plausible reason for the Court to consider their Proposed Amicus Brief, it should be denied.[3]

## II.    The Court Should Reject the Arguments Contained in the Proposed Amicus Brief

As shown above, the tenuous interests of the Proposed Amici do not qualify them to provide substantive assistance to the Court in deciding the pending Motion to Dismiss. But, even should the Court choose to consider the Proposed Amicus Brief (to be sure, it should not), it should discount the document's tenuous, duplicative, and in many aspects misleading arguments.

### a.    Sections I and II of the Proposed Amicus Brief Inappropriately Contain New Legal Arguments, And Are Otherwise Duplicitave

"An *amicus curiae* is . . . not a party to the action, and . . . may not assume the functions of a party, nor may it initiate, create, extend, or enlarge the issues." *Famulus Health LLC v. GoodRX, Inc.*, 2024 WL 4151090, at *5 (D.S.C. Sept. 11, 2024). The Fourth Circuit, "and [its] sister circuits[,] have consistently been wary, even prohibitive, of addressing an issue raised solely by an amicus." *Snyder v. Phelps*, 580 F.3d 206, 216 (4th Cir. 2009). A party "must raise in its opening brief all the issues it wishes the court to address," and "may not split up the issues [with an amicus] and expect the court to consider that they have all been raised." *Id. See also Tafas v. Dudas*, 511 F. Supp. 2d 652, 661 (E.D. Va. 2007) (granting leave to file an amicus curiae, but declining to "consider any legal issues or arguments therein that were not raised by the parties themselves");

---

[3] The Court may be wondering why Senators Blackburn and Luján are the two individuals to file the Motion. A possible answer is that the two Senators introduced a Bill last year, titled the "MAIN Event Ticketing Act." The MAIN Event Ticketing Act would modify the BOTS Act by, among other things, defining the term "circumvent" and requiring ticket issuers to enforce their written policies (something ticket issuers do not currently have to do). *See* MAIN Event Ticketing Act, S. 196, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/senate-bill/196/text. The MAIN Event Ticketing Act is currently stalled in the Senate. In lieu of working to adopt the Bill, Proposed Amici are evidently attempting to shoehorn their proposed legislation into the current version of the BOTS Act.

*Alliance for the Wild Rockies v. Anderson*, 780 F. Supp. 3d 1075, 1076 (D. Mont. 2025) ("Generally, arguments not raised in a party's opening brief are deemed waived, and the court will not consider arguments raised only in amicus briefs.").

Plaintiff had every opportunity to raise any arguments and issues that it deemed fit in the 26-page Opposition it filed (with four pages to spare). The legislators who drafted the Proposed Amicus Brief evidently believe Plaintiff's Opposition is lacking, as the brief contains new arguments Plaintiff failed to raise.[4] The Proposed Amici have no place serving as "secondary counsel" for Plaintiff.

The remaining legal arguments in the Proposed Amicus Brief's Sections I and II swing in the opposite direction, simply restating Plaintiff's positions.[5] As such, these Sections of the Proposed Amicus Brief provide the Court no assistance.

### b.   Section III of the Proposed Amicus Brief Misrepresents Both the BOTS Act's Legislative History and Proposed Amici's Prior Positions

Section III of the Proposed Amicus Brief has Proposed Amici speak retrospectively for 535 members of the 114th Congress, which passed the BOTS Act a decade ago. As discussed *supra*, Section I, this is inappropriate, and violative of Supreme Court precedent. *Cf. Blanchette*, 419 U.S. at 132. Proposed Amici have no business revising history on behalf of a past Congress.

The Proposed Amicus Brief's conclusory statements about what the 114th Congress meant when it passed the BOTS Act have no basis in the BOTS Act's legislative history. And, even if

---

[4] For example, despite Plaintiff declining to respond to KIG's argument (and thus waiving its right to do so) that the BOTS Act requires "actual enforcement," the Proposed Amicus Brief attempts to argue on behalf of the Commission as to the meaning of the phrase "used . . . to enforce." Proposed Amicus Brief, 7-8. Similarly, and again despite Plaintiff never contesting the issue, the Proposed Amicus Brief argues that the Ticketmaster Fan Support representative's email (*See* Complaint, at Att. A) is insufficient to qualify as permission. *Id.*, 6, n.4.

[5] For example, in Section I of the Proposed Amicus Brief, Proposed Amici make the same argument as Plaintiff. *Compare* Proposed Amicus Brief, 4 *with* Plaintiff Opposition to Motion to Dismiss, 18 (making parallel arguments regarding the definition of circumvent).

they did (they do not), Proposed Amici's retrospective musings on Congress's intent have no precedential value.

Even worse than speculating about a Congress's prior intent as if it were fact, **Proposed Amici misrepresent their own prior statements that the BOTS Act is about bots**. In one particularly egregious example, the Proposed Amicus Brief quotes a contemporaneous Press Release in which then-Representative Blackburn affirmed that in 2016 she believed the BOTS Act was about BOTS. The actual text Press Release quotes Blackburn saying, in pertinent part:

> Scalpers have been taking advantage *of computer hacking software (BOTS) to circumvent restrictions put in place by online ticketing agents for years*. They purchase tickets in mass quantities and sell them at a drastically inflated rate . . .

Press Release, Office of Congressman Paul Tonko, *Tonko, Blackburn Lead Bipartisan Effort to Level Online Ticket Sales Playing Field for Fans of Live Entertainment* (April 28, 2016), http://tinyurl.com/Tonko-Bbn (emphasis and color added). When Proposed Amici quote the Press Release, they ellipse out the highlighted language:

> Scalpers *. . .* purchase tickets in mass quantities and sell them at a drastically inflated rate . . .

Proposed Amicus Brief, 11 (emphasis and color added). There is no legitimate basis for glossing over the language affirming that then-Representative Blackburn believed the BOTS Act was about bots. *See Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, 2009 WL 2606254, at *48 (E.D. Va. Aug. 20, 2009) (labeling "clever use of ellipses" that "change[] the meaning of the statement" an example of "improper briefing").

Indeed, *every contemporaneous source the Proposed Amicus Brief cites or quotes emphasizes that legislators believed the BOTS Act was about bots*. *See*, *e.g.*, Proposed Amicus Brief, 11 (citing and selectively quoting Senator Blumenthal's press release on the BOTS Act,

8

which repeatedly emphasizes that he believed the BOTS Act was about bots). The actual language states, in pertinent part,

> "[t]he Better Online Ticket Sales Act, also known as the BOTS Act, will ban 'ticket bots' . . . ***This measure stops scalpers from using bot technology to devour tickets and sell them at inflated, unfair prices***."

Press Release, *Office of Senator Richard Blumenthal, Senate Approves Blumenthal Bill to Crack Down on Unfair Ticket Bots* (Dec. 1, 2016), http://tinyurl.com/Blum-PR (emphasis added)). *See also* Proposed Amicus Brief, 11 (citing and selectively quoting a press release from Senator Amy Klobuchar which repeatedly affirms she believed the BOTS Act was about bots. The actual language states, in pertinent part, that "**Passing this bipartisan legislation in the Senate moves us one step closer to limiting the ability of ticket buying bots to cut in line and drive up prices for real fans.**" Press Release, Office of Senator Amy Klobuchar, *Klobuchar-Backed Bipartisan Legislation to Protect Consumers from Ticket Bots Passes Senate* (Dec. 2, 2016), http://tinyurl.com/Klob-PR (emphasis in original)).

Given the Proposed Amicus Brief's egregious, repeated misrepresentations, Section III of the Proposed Amicus Brief has no persuasive value.

      **c.**      **Section IV of the Proposed Amicus Brief Inappropriately Introduces Non-Judicially Noticeable Documents in Order to Make a Public Policy Argument Inappropriate for a Motion to Dismiss**

Section IV of the Proposed Amicus Brief contains Purported Amici's public policy argument. They assert that Defendants' "construction of the BOTS Act would impose serious and substantial real-world costs on Americans . . . ." Proposed Amicus Brief, 13. Proposed Amici are not qualified to opine on this argument. *See supra*, Section I. They implicitly acknowledge this by relying not on their own knowledge, but instead on a host of external "evidence" unrelated to their own experience, and not contained in the record of this case or the BOTS Act's legislative history. *See*, *e.g.*, Proposed Amicus Brief, 13 (quoting and relying on policy paper written by the Digital

Citizens Alliance, an group vocally opposed to the secondary-ticket market). *See also id.*, 13-14 (quoting non-peer reviewed working paper by Phillip Leslie and Alan Sorensen); *id.*, 14 (relying on a study of the National Independent Talent Organization, an anti-secondary market trade association). The Proposed Amicus Brief's introduction of (largely partisan) material is inappropriate for a motion to dismiss, and warrants the Court's rejection.

While an amicus brief may offer a "fresh perspective" on unsettled question[s] of law that the actual parties to the litigation have not fully addressed," it may not masquerade itself as a commentary to supplement the record. *Cf. U.S. v. Yaroshenko*, 86 F.Supp.3d 289, 290 (S.D.N.Y. 2015) ("To the extent that Russia seeks to comment on the existence of allegedly newly discovered evidence, that is not the proper role of an amicus."). The risk of admitting extrinsic evidence via amici is especially prejudicial on a motion to dismiss. Doing so gives one party the benefit of an amicus brief bound by no admissibility standards or regard for procedural posture, while simultaneously depriving the other party an opportunity to defend themselves without prematurely adopting a summary judgment standard. As such, Section IV of the Proposed Amicus Brief has no persuasive value.

**CONCLUSION**

The Motion should be denied.

Dated: January 14, 2026                    Respectfully submitted,

By: */s/ Bezalel A. Stern*
    Bezalel A. Stern (D. Md. Bar. No. 20667)
    Joshua N. Drian (*pro hac vice*)
    MANATT, PHELPS & PHILLIPS, LLP
    1050 Connecticut Ave. NW, Suite 600
    Washington, D.C. 20036
    Tel.: (202) 585-6500
    bstern@manatt.com
    jdrian@manatt.com

    *Counsel for Defendants*

11