manatt

**Joshua N. Drian**
Manatt, Phelps & Phillips, LLP
Direct Dial: (202) 585-6625
jdrian@manatt.com

August 19, 2026

**VIA ECF**
Hon. George L. Russell, III
United States District Court for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

**Re: *Federal Trade Commission v. Key Investment Group LLC, et al.*, Case No. 1:25-cv-02716-GLR: Discovery Dispute re: the Main Event Ticketing Act**

Dear Chief Judge Russell:

We represent Defendants in the above-referenced action. In accordance with L.R. 104(8) and Your Honor's Standing Order on Discovery (Dkt. 58-2), Defendants respectfully submit this request to compel the FTC to search for and produce responsive documents concerning the Main Event Ticketing Act.[1] This discovery goes directly to central issues in this case, including the scope and applicability of the BOTS Act, Defendants' critical factual defenses on liability, and the knowledge required for civil penalties under the BOTS Act. Yet the FTC refuses to provide it.

## I. The BOTS Act's Relationship to the Main Event Ticketing Act

The FTC's one-count Complaint alleges Defendants violated the BOTS Act, which prohibits Defendants from "circumvent[ing] a security measure … on an Internet website or online service that is used by the ticket issuer to enforce posted event ticket purchasing limits or to maintain the integrity of posted online ticket purchasing order rules." 15 U.S.C. § 45c(a)(1)(A). In defense, Defendants contend that Ticketmaster, the relevant ticket issuer, ***understood, authorized, and partnered directly with Defendants*** in their practices. This foundational deficiency precludes liability, because (among other reasons): (1) Defendants did not circumvent anything: they went through the door Ticketmaster opened and encouraged them to enter, and (2) Ticketmaster used nothing to "enforce" purported ticket limits; it affirmatively ***chose not to enforce*** such limits. In either case, the FTC will be unable to prove critical elements of its BOTS Act claim.[2]

The currently pending Main Event Act provides powerful support for Defendants' position.[3] It is designed to amend and "strengthen[] the BOTS Act," by "***Requiring*** Online Ticket Issuers To ***Enforce Site Policies***" and to "***establish, implement, and maintain***" their BOTS Act security measures. **Ex. 4, p. 8, ¶ 2(a), (b)** (emph. added). By "strengthening" the BOTS Act in this way, the bill recognizes that ticket issuers like Ticketmaster are ***not*** currently implementing or

[1] For ease of reference, the requests at-issue (KIG RFPs 18-19 and 25) are identified in **Ex. 1** attached.

[2] *See, e.g.*, Dkt. 57 ¶ 38. Indeed, the Court recognized in its Memorandum Opinion that whether Ticketmaster "condoned or encouraged Defendants' behavior" bears directly on whether the "FTC will … 'establish' liability," which will be the subject of summary judgment. Dkt. 54, p. 11.

[3] The bill was introduced by Senators Blackburn and Luján, who sponsored the BOTS Act and are Amici in this case. Dkt. 54, 10. It is meant to "expand[ ]" ticket protections (**Ex. 2**) and "boost[ ]" BOTS Act enforcement. **Ex. 3**.

enforcing their own security measures. This recognition is critical to the FTC's ***current*** claims: if Ticketmaster is not using its security measures to enforce ticket limits, then ***definitionally*** there can be no BOTS Act liability. Tellingly, the FTC itself makes this ***same allegation*** in its own Complaint against Ticketmaster.[4]

## II. Defendants' Requests for Production are Relevant and Discoverable

In response to Defendant KIG's RFPS 18-19 and 25, the FTC categorically refuses to produce ***any*** documents related to the Main Event Act. **Ex. 1**. The FTC argues that these documents are irrelevant because the Act "is not a law and does not alter, as a bill, the text of the BOTS Act or the FTC's enforcement of the BOTS Act." *Id.* (Am. Resp. to RFP 25). This misses the point.

Documents concerning the Main Event Act are relevant because of what they say about the ***BOTS Act***. The Main Event Act is intended to "strengthen[ ]" the BOTS Act by ***requiring*** ticket issuers to maintain and enforce their own security measures. Given this critical purpose, communications concerning the Main Event Act's "proposed enactment and any relationship or connection to the BOTS Act" (RFP 25) are directly related to the BOTS Act's scope, limitations, and enforceability as currently written. Such communications will likely show that Ticketmaster did ***not*** enforce its own security measures—supporting one of the most critical liability issues in this case (and specifically why the Main Event Act was proposed). Likewise, FTC communications with the senators who sponsored both statutes (RFP 18) and others (RFP 25) are likely to recognize gaps in the BOTS Act when ticket issuers (like Ticketmaster) choose not to enforce security measures. This explicit evidence of the BOTS Act's limited reach is discoverable. *Kalaris v. Donovan*, 697 F.2d 376, 392 n.65 (D.C. Cir. 1983). This goes directly to liability.[5]

The requested discovery is also relevant to Defendants' "actual knowledge or knowledge fairly implied," requirement for civil penalties. 15 U.S.C. § 45(m)(1)(A). Defendants did not understand the BOTS Act to apply to their industry standard conduct approved by Ticketmaster. Congress's decision to amend and strengthen the BOTS Act to address that ***precise issue*** supports the reasonableness of Defendants' position. This discovery goes directly to Defendants' knowledge defense and must be produced.[6]

---

[4] *FTC v. Live Nation Ent., Inc.*, No. 2:25-cv-08884-MEMF-MAA (C.D. Cal. Sept. 18, 2025) Compl. ¶ 90, (Ticketmaster "***consistently declined to use [its] enforcement measures to prevent brokers from exceeding ticket limits***.") (emph. added); *Id.* ¶ 15 ("Rather than enforce their ticket limits and purchasing rules against brokers, [Ticketmaster] knowingly allow[s], and in fact even *encourage[s]*, brokers to use multiple Ticketmaster accounts….").

[5] Such materials also go directly to Defendants' Affirmative Defense concerning selective enforcement (Dkt. 57, Aff. Def. 15) and to the FTC's own credibility, if it is taking a position now that it previously admitted is untenable under the BOTS Act. The Court previously recognized the relevance of Senators Blackburn's and Luján's understanding of the BOTS Act, as legislators who worked on its enactment. Dkt. 54, 10. Those two senators are the Main Event Act's primary sponsors. Thus, this also goes to the credibility of their assertions in their *amicus*. (Dkt. 56).

[6] The FTC also objects based on a number of purported privileges. But communications with third parties, factual statements, statements of law, assessments of internal policy, and internal communications that do not reflect on the FTC's specific, internal deliberative process are not privileged. *See S.C. Coastal Conservation League v. Ross*, 431 F. Supp. 3d 719, 724 (D.S.C. 2020); *Jones v. Murphy*, 256 F.R.D. 510, 517-18 (D. Md. 2008). Regardless, such assertions do not support a blanket objection to production. The FTC must search for and produce relevant, non-privileged documents, and provide a privilege log for any documents over which it asserts a privilege.

Respectfully submitted,

**MANATT, PHELPS & PHILLIPS, LLP**

By: *<u>/s/ Joshua N. Drian</u>*

Bezalel A. Stern
Joshua N. Drian (*pro hac vice*)
1700 M Street NW, 4th Floor
Washington, D.C. 20036
Phone: (202) 585-6500
bstern@manatt.com
jdrian@manatt.com

Matthew F. Bruno (*pro hac vice*)
7 Times Square
New York, NY 10036
Phone: (212) 790-4626
mbruno@manatt.com

*Counsel for Defendants*

Encls.

cc: All counsel of record (Via CM/ECF)