UNITED STATES OF AMERICA
Federal Trade Commission
Washington, D.C. 20580

Bureau of Consumer Protection
Division of Marketing Practices

**FILED VIA CM/ECF**

September 29, 2026

The Honorable George L. Russell, III
United States District Court for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

Re: *FTC v. Key Investment Group LLC, et al.*, No. 25cv2716 (D. Md.)

Dear Judge Russell:

Pursuant to the Standing Order on Discovery Procedures (ECF No. 58-2), the Federal Trade Commission seeks the Court's assistance in resolving a discovery dispute concerning Defendants' refusal to use five search terms requested by the FTC in Defendants' search for documents and communications responsive to the FTC's requests for production ("RFPs").

***Background***. The FTC issued requests for production to all Defendants in early-to-mid June 2026. Responses were due on or before July 17. The relevant RFPs are included as Attachment A to this letter. As shown by the email correspondence in Exhibit 1, despite FTC counsel's repeated requests to meet and confer on search terms and custodians, defense counsel refused to engage until mid-August. On August 18, defense counsel shared Defendants' proposed search terms. *See* Exhibit 2. The proposal was difficult to review because it did not separate search terms by RFP or custodian. To move the negotiations along, and rather than nit-picking Defendants' suggested terms, on August 20, FTC counsel proposed 32 additional terms to cover relevant and responsive topics that were missing from Defendants' proposal. *See* Exhibit 3 at 8. Defendants eventually agreed to add 11 of the terms.[1] *See id.* at 3-4, 7. Defendants declined to add any others, objecting based on burden and proportionality but not relevance.[2]

As of the time of this filing, more than three months after the FTC served its RFPs, Defendants have produced only 41 documents, most of which are publicly available articles and press releases.

***Argument***. Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Proportionality requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Virginia Dep't of Corrections v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)). Courts routinely compel parties to use particular search terms to identify relevant documents. *E.g.*, *Braxton Minerals, III, LLC v. Antero Res. Corp.*, 2024 WL 4800592 (N.D. W. Va. Aug. 2, 2024); *Van Connor v. One Life America, Inc.*, No. 6:19-cv-3283, 2021 WL 12312822 (D. S.C. Aug. 25, 2021); *Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 1574140 (W.D. Va. Apr. 21, 2021).

Having attempted to negotiate with defense counsel in good faith, the FTC now requests that the Court order Defendants to include the five additional search terms set forth in Attachment B.

---

[1] Defendants claim they have added 12 search terms, but they have double counted their agreement to search "Primary w/3 cancel!" and "primary W/3 cancel!" *See* Exhibit 3 at 3.

[2] In an email on September 17, FTC counsel requested that, "If Defendants are objecting that any of the following searches are hitting on significant numbers of nonresponsive or irrelevant documents, please let us know so that we can work with you to further narrow the scope to more precisely target the responsive and relevant documents." Exhibit 3 at 2. Defense counsel's response did not address this point.

***(1) The Search Terms Will Identify Highly Relevant Documents***. The FTC's five proposed search terms (Attachment B) seek documents that are central to the FTC's claims and Defendants' defenses and not adequately included in Defendants' proposed search.[3] Proposed Term 1, *(ticket* OR account*) AND script*, seeks documents related to computer scripts that brokers use to circumvent security measures used to enforce ticket limits. Defendants have heavily relied on their claim that they do not use such programs. According to Defendants' hit rate report, however, searching *(ticket* OR account*) AND script* yields 3,585 unique hits.[4] *See* Exhibit 4 at 2. While some terms in Defendants' proposal (Exhibit 2) included *bots* or *software*, the hit rate for Proposed Term 1 suggests that Defendants may instead refer to programs it uses to acquire tickets or maintain its many accounts as *scripts*.[5]

Proposed Terms 2-5 seek documents relating to relevant topics that Defendants want to exclude altogether, namely: "denial of entry"[6] or locking of accounts.[7] Because Defendants' proposed terms do not cover these relevant topics, Proposed Terms 2 and 3 are not redundant. *See* Exhibit 2 (including no search terms containing "denial," "entry," or "lock").

Defendants' proposed terms also exclude the purchase of accounts or codes, which would be directly responsive to RFP 13(g). *See id.* (including no search terms relating to the purchase of accounts or codes). At the FTC's insistence, Defendants agreed to add *account* AND Crowdsource* and *account* AND "Crowd Source"*, which cover similar topics (the acquisition of fresh accounts—not known to Ticketmaster to be associated with Defendants—to purchase tickets). *See* Exhibit 3 at 3. However, the *crowdsource* terms had significantly lower hit rates (50 and 9, respectively), suggesting that Defendants more frequently discuss this concept in terms like Proposed Terms 4 and 5, *("buy" OR "bought") W/5 "account*"* and *("buy" OR "bought") W/5 "code*"*. *See* Exhibit 4 at 2. Such documents are highly relevant to the FTC's allegations that Defendants buy Ticketmaster accounts and codes from others to circumvent security measures used to enforce ticket limits. *See* Complaint ¶ 43 (ECF 1 at 13).

***(2) Any Purported Burden or Expense is Self-Imposed***. Defendants have not provided the FTC with a cost estimate for the additional search terms. Even if they did, however, such additional costs would be self-imposed—the entirely predictable result of defense counsel's refusal to negotiate search terms until after Defendants "already started their collection and review of responsive documents." Exhibit 1 at 7. Accordingly, the Court should not weigh any purported burden in Defendants' favor. *See Wagoner v. Lewis Gale Medical Center, LLC*, No. 7:15cv570, 2016 WL 3893135, at *3 (W.D. Va. July 14, 2016) (declining to find an undue burden where the party's own choice made the search more costly).

***Conclusion.*** Because the FTC's proposed search terms seek relevant documents not adequately covered by Defendants' search, and Defendants' own delay would be the cause of any additional burden, the FTC requests that the Court order Defendants to use the five search terms in Attachment B.

---

[3] The FTC anticipates that Defendants will point to its lengthy list of search terms as proof that its search has been sufficient. A close review of the list, however, demonstrates that many of Defendants' proposed terms are duplicative and seem designed to merely inflate the number of searches. To give just one example, Defendants propose to search both *Ticketmaster W/25 TradeDesk* and *TradeDesk* as separate searches, even though the first search is completely superfluous because the second search encompasses the first. *See* Exhibit 2 at 2, 4.

[4] Unique hits, rather than "hits," are the appropriate number to consider. *See Van Connor*, 2021 WL 12312822., at *4 n. 5.

[5] Defendants have not provided a hit rate for their own proposed search terms.

[6] Ticket brokers use this terminology to describe the fan experience of being turned away from an event because the ticket they bought on the secondary market was cancelled by the ticket issuer because it was purchased on the primary market in violation of the ticket issuer's rules.

[7] As a security measure, Ticketmaster sometimes locks accounts that it suspects have been used to circumvent security measures, access control systems, or other technological controls or measures used to enforce ticket limits.

Respectfully submitted,

*/s/ Simon Barth*

Simon Barth (MA Bar No. 706122)
P. Connell McNulty (PA Bar No. 87966)
Lauren Rivard (NY Bar No. 5308192)
Molly Rucki (D. Md. Bar No. 22369)
600 Pennsylvania Avenue, NW
Washington, DC 20580
Ph: 202-326-3317 (Barth); 2061 (McNulty); 2450 (Rivard); 3774 (Rucki)
Email: sbarth@ftc.gov; pmcnulty@ftc.gov; lrivard@ftc.gov, mrucki@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

Encls.

cc: All counsel of record (Via CM/ECF)

**Attachment A – Relevant Requests for Production**

**RFP No. 13 [to Defendant Key Investment Group LLC]** Produce all Communications Concerning the following topics:

a) The Better Online Ticket Sales Act, 15 U.S.C. § 45c (the "BOTS Act");

b) Software that can be used to purchase or sell, or assist in the purchase or sale, of Event Tickets, including but not limited to internet browsers, internet browser extensions, IP proxy services, operating software for SIM boxes, or inventory management applications;

c) Security measures, whether specified or unspecified, on Ticketmaster's website or mobile application;

d) Your use of multiple debit card accounts, credit card accounts (including virtual credit cards), or prepaid card accounts;

e) Your use of SIM cards or SIM boxes;

f) Purchase limits on Event Tickets imposed by Ticketmaster or any other Ticket Issuer(s);

g) The creation, purchase, or acquisition of Ticketmaster accounts or other Ticket Issuer accounts to purchase Event Tickets;

h) The retirement of Ticketmaster accounts or other Ticket Issuer accounts used to purchase Event Tickets;

i) Consumers being unable or limited in their ability to purchase Event Tickets on the primary market (for example by Event Ticket prices or availability) in whole or in part because of Event Ticket purchases by You or other ticket brokers;

j) Ticketmaster's cancellation of purchased tickets;

k) Proposed legislation Concerning the ticketing industry.

**RFP No. 14 [to Defendants Front Rose Tix LLC, WLK Investments LLC]** Produce all Communications Concerning the following topics:

a) The Better Online Ticket Sales Act, 15 U.S.C. § 45c (the "BOTS Act");

b) Software that can be used to purchase or sell, or assist in the purchase or sale, of Event Tickets, including but not limited to internet browsers, internet browser extensions, IP proxy services, operating software for SIM boxes, or inventory management applications;

c) Security measures, whether specified or unspecified, on Ticketmaster's website or mobile application;

d) Your use of multiple debit card accounts, credit card accounts (including virtual credit cards), or prepaid card accounts;

e) Your use of SIM cards or SIM boxes;

f) Purchase limits on Event Tickets imposed by Ticketmaster or any other Ticket Issuer(s);

g) The creation, purchase, or acquisition of Ticketmaster accounts or other Ticket Issuer accounts to purchase Event Tickets;

h) The retirement of Ticketmaster accounts or other Ticket Issuer accounts used to purchase Event Tickets;

i) Consumers being unable or limited in their ability to purchase Event Tickets on the primary market (for example by Event Ticket prices or availability) in whole or in part because of Event Ticket purchases by You or other ticket brokers;

j) Ticketmaster's cancellation of purchased tickets;

k) Proposed legislation Concerning the ticketing industry.

**RFP No. 15 [to Defendants TotalTickets.com LLC, Totally Tix LLC]** Produce all Communications Concerning the following topics:

a) The Better Online Ticket Sales Act, 15 U.S.C. § 45c (the "BOTS Act");

b) Software that can be used to purchase or sell, or assist in the purchase or sale, of Event Tickets, including but not limited to internet browsers, internet browser extensions, IP proxy services, operating software for SIM boxes, or inventory management applications;

c) Security measures, whether specified or unspecified, on Ticketmaster's website or mobile application;

d) Your use of multiple debit card accounts, credit card accounts (including virtual credit cards), or prepaid card accounts;

e) Your use of SIM cards or SIM boxes;

f) Purchase limits on Event Tickets imposed by Ticketmaster or any other Ticket Issuer(s);

g) The creation, purchase, or acquisition of Ticketmaster accounts or other Ticket Issuer accounts to purchase Event Tickets;

h) The retirement of Ticketmaster accounts or other Ticket Issuer accounts used to purchase Event Tickets;

i) Consumers being unable or limited in their ability to purchase Event Tickets on the primary market (for example by Event Ticket prices or availability) in whole or in part because of Event Ticket purchases by You or other ticket brokers;

j) Ticketmaster's cancellation of purchased tickets;

k) Proposed legislation Concerning the ticketing industry.

**RFP No. 8 [to Defendants Elan Rozmaryn, Yair Rozmaryn, and Taylor Kurth]** Produce all Communications Concerning the following topics:

a) The Better Online Ticket Sales Act, 15 U.S.C. § 45c (the "BOTS Act");

b) Software that can be used to purchase or sell, or assist in the purchase or sale, of Event Tickets, including but not limited to internet browsers, internet browser extensions, IP proxy services, operating software for SIM boxes, or inventory management applications;

c) Security measures, whether specified or unspecified, on Ticketmaster's website(s) or mobile application(s);

d) Your use of multiple debit card accounts, credit card accounts (including virtual credit cards), or prepaid card accounts;

e) Your use of SIM cards or SIM boxes;

f) Purchase limits on Event Tickets imposed by Ticketmaster or any other Ticket Issuer(s);

g) The creation, purchase, or acquisition of Ticketmaster accounts or other Ticket Issuer accounts to purchase Event Tickets;

h) The retirement of Ticketmaster accounts or other Ticket Issuer accounts used to purchase Event Tickets;

i) Consumers being unable or limited in their ability to purchase Event Tickets on the primary market (for example by Event Ticket prices or availability) in whole or in part because of Event Ticket purchases by You or other ticket brokers;

j) Ticketmaster's cancellation of purchased tickets;

k) Proposed legislation Concerning the ticketing industry.

l) Ticket inventory management tools or platforms (e.g., TradeDesk, CSIM, Ticket Utils, SkyBox, Automatiq).

**Attachment B – Proposed Search Terms and Unique Hits**

| No. | FTC-Proposed Search Terms | Unique Hits | RFP |
|---|---|---|---|
| 1 | (ticket* OR account*) AND script | 3,585 | 13(b) |
| 2 | "denial of entry" OR "DOE" OR "denied entry" | 9,298 | 13(j) |
| 3 | account* W/5 lock* | 1,981 | 13(c) |
| 4 | ("buy" OR "bought") W/5 "account*" | 4,795 | 13(c), (g) |
| 5 | ("buy" OR "bought") W/5 "code*" | 2,931 | 13(c), (g) |
| | **Total:** | 22,590 | |