**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br><br>v.<br><br>KEY INVESTMENT GROUP LLC, *et al.*<br>Defendants. | Case No. 1:25-cv-02716-GLR |

**MEMORANDUM OF SENATORS MARSHA BLACKBURN AND BEN RAY LUJÁN IN OPPOSITION TO KEY INVESTMENT GROUP'S MOTION TO COMPEL COMPLIANCE WITH THIRD-PARTY SUBPOENAS**

Morgan J. Frankel
Senate Legal Counsel

Patricia Mack Bryan
Deputy Senate Legal Counsel

Thomas E. Caballero
Senior Assistant Senate Legal Counsel

Vivian M. Rivera
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)
morgan_frankel@legal.senate.gov
pat_bryan@legal.senate.gov
thomas_caballero@legal.senate.gov
vivian_rivera@legal.senate.gov

Attorneys for Subpoena-Respondents[*]

[*] Section 288*l*(b) of title 2 of the United States Code provides that undersigned counsel, who serve in the Office of Senate Legal Counsel, "shall be entitled, for the purpose of performing [their] functions under this chapter, to enter an appearance in any proceeding before any court of the United States or of a State or political subdivision thereof without compliance with any requirement for admission to practice before such court. . . ." This appearance has been authorized pursuant to Senate Resolution 839, 119th Cong. (2026), 172 Cong. Rec. S4525, S4530 (daily ed. Aug. 6, 2026); *see also* Local Rule 701.1(b).

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . 3

A. The FTC's Civil Action Against KIG. . . . . . . . . . 3

B. Senators Blackburn and Luján Participate as Amici Curiae To Offer Legal Arguments in Support of the FTC's Opposition to the Motion to Dismiss . . . . . . . . . . 3

C. The Court Denies KIG's Motion to Dismiss . . . . . . . . . . 5

D. KIG Issues Subpoenas to Senators Blackburn and Luján. . . . . . . . . . 5

ARGUMENT . . . . . . . . . . 8

I. THE SPEECH OR DEBATE CLAUSE BARS COMPELLING SENATORS TO PRODUCE DOCUMENTS REGARDING MATTERS WITHIN THE LEGISLATIVE SPHERE. . . . . . . . . . 8

A. The Subpoenas Seek Categories of Records That are Protected From Compelled Disclosure by the Speech or Debate Clause. . . . . . . . . . 10

B. KIG's Arguments Provide No Basis for Vitiating the Senators' Constitutional Privilege. . . . . . . . . . 12

II. THE SUBPOENAS SEEK MATERIALS NOT RELEVANT TO THE CLAIMS OR DEFENSES IN THE UNDERLYING ACTION AND PRESENT AN UNDUE BURDEN ON NONPARTY MEMBERS OF CONGRESS . . . . . . . . . . 18

A. The Materials Sought by the Subpoenas Are Not Relevant to the Claims or Defenses at issue in the Underlying Action. . . . . . . . . . 19

B. The Subpoenas Remain Overly Broad and Impose an Undue Burden on the Senators.. . . . . . . . . . 24

III. SOVEREIGN IMMUNITY PRECLUDES ENFORCEMENT OF THESE SUBPOENAS . . . . . . . . . . 26

CONCLUSION. . . . . . . . . . 30

## TABLE OF AUTHORITIES

### CASES

*Am. Humanist Ass'n v. Md.-Nat'l Cap. Park & Planning Comm'n*, No. 14–0550, 2015 WL. 771645 (D. Md. Feb. 23, 2015) . . . . . . . . . . 21

*Anderson v. Gates*, 20 F. Supp. 3d 114 (D.D.C. 2013) . . . . . . . . . . 28

*Arista Records LLC v. Does 1-14*, No. 7:08cv00205, 2008 WL 5350246 (W.D. Va. Dec. 22, 2008) . . . . . . . . . . 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . 23

*Attkisson v. United States*, No. 1:23-cv-01106, 2024 WL 3877599 (D. Md. Aug. 20, 2024) . . . . . . . . . . 28

*Barenblatt v. United States*, 360 U.S. 109 (1959) . . . . . . . . . . 11

*Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002) . . . . . . . . . . 22

*Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102 (1974) . . . . . . . . . . 4

*Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989) . . . . . . . . . . 26

*Bread Pol. Action Comm. v. FEC*, 455 U.S. 577 (1982) . . . . . . . . . . 20

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) . . . . . . . . . . 2, 8, 9, 11-13, 18

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) . . . . . . . . . . 20

*BuzzFeed, Inc. v. U.S. Dep't of Justice,* 318 F. Supp. 3d 347 (D.D.C. 2018) . . . . . . . . . . 23, 24

*Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337 (D.C. Cir. 2019) . . . . . . . . . . 20

*Clark v. Libr. of Cong.*, 750 F.2d 89 (D.C. Cir. 1984) . . . . . . . . . . 28

*COMSTAT Corp. v. Nat'l Science Found.*, 190 F.3d 269 (4th Cir. 1999) . . . . . . . . . . 26, 28

*Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors*, 157 F.4th 1235 (10th Cir. 2025) . . . . . . . . . . 21

*Danihel v. Off. of the President of the U.S.*, 616 F. App'x 467 (3d Cir. 2015) . . . . . . . . . . 26

*De la Torre v. Cassidy*, 185 F.4th 174 (D.C. Cir. 2026) . . . . . . . . . . 14

*Doe v. McMillan*, 412 U.S. 306 (1973) . . . . . . . . . . 9, 12

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975) . . . . . . . . . . 8-10, 12

*Educ. Fin. Council v. Oberg,* No. 10-mc-0079, 2010 WL 3719921 (D.D.C. Mar. 8, 2010). . . . . . . . . . 23, 24

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . 26

*Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023) . . . . . . . . . . 23

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015). . . . . . . . . . 22

*Glassroth v. Moore*, 229 F. Supp. 2d 1290 (M.D. Ala. 2002) . . . . . . . . . . 14

*Gov't of Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir. 1985) . . . . . . . . . . 11, 15

*Gravel v. United States*, 408 U.S. 606 (1972) . . . . . . . . . . 9

*Greenburg v. Collier*, 482 F. Supp. 200 (E.D. Va. 1979). . . . . . . . . . 16

*Helstoski v. Meanor*, 442 U.S. 500 (1979) . . . . . . . . . . 9, 18

*Houston Business Journal v. Off. of the Comptroller of the Currency, U.S. Dep't of the Treasury*, 86 F.3d 1208 (D.C. Cir. 1996) . . . . . . . . . . 29

*Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939 (D.C. Cir. 2013) . . . . . . . . . . 8

*In re Sealed Case*, 80 F.4th 355 (D.C. Cir. 2023) . . . . . . . . . . 8, 10

*Jewish War Veterans of the U.S.A., Inc. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007) . . . . . . . . . . 11, 14, 15

*Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (2021) . . . . . . . . . . 12

*Keener v. Congress*, 467 F.2d 952 (5th Cir. 1972). . . . . . . . . . 26

*Kentucky v. Graham*, 473 U.S. 159 (1985). . . . . . . . . . 26

*Kilbourn v. Thompson*, 103 U.S. 168 (1881) . . . . . . . . . . 9

*Lane v. Pena*, 518 U.S. 187 (1996). . . . . . . . . . 2, 27, 30

*Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001). . . . . . . . . . 29

*Liverman v. Comm. on the Judiciary, U.S. House of Representatives*, 51 F. App'x 825 (10th Cir. 2002) . . . . . 26

*Maarawi v. U.S. Congress*, 24 F. App'x 43 (2d Cir. 2001) . . . . . 26

*Manning v. Caldwell for City of Roanoke*, 930 F.3d 264 (4th Cir. 2019) . . . . . 21

*McGrain v. Daugherty*, 273 U.S. 135 (1927) . . . . . 11

*McLean v. United States*, 566 F.3d 391 (4th Cir. 2009) . . . . . 26

*Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983) . . . . . 11, 15

*Minpeco, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856 (D.C. Cir. 1988) . . . . . 8, 10, 12, 16, 17, 24

*Moyle v. United States*, 603 U.S. 324 (2024) . . . . . 21

*Musgrave v. Warner*, 104 F.4th 355 (D.C. Cir. 2024) . . . . . 9, 11

*N.C. Right to Life v. Leake,* 231 F.R.D. 49 (D.D.C. 2005) . . . . . 19, 21

*N.Y. State Ass'n of Realtors, Inc. v. Shaffer*, 135 F.R.D. 78 (S.D.N.Y. 1991) . . . . . 14

*Nat'l Veterans Legal Servs. Program v. United States*, 291 F. Supp. 3d 123 (D.D.C. 2018) . . . . . 20

*Pittston Coal Group, Inc. v. Int'l Union, United Mine Workers of Am.*, 894 F. Supp. 275 (W.D. Va. 1995) . . . . . 16

*Rise Economy v. Vought*, 823 F. Supp. 3d 1013 (N.D. Cal. 2026) . . . . . 20

*Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799 (4th Cir. 2019) . . . . . 27

*Rockefeller v. Bingaman*, 234 F. App'x 852 (10th Cir. 2007) . . . . . 26, 28

*SEC v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661 (S.D. Fla. 2012) . . . . . 23

*SEC v. Comm. on Ways and Means*, 161 F. Supp. 3d 199 (S.D.N.Y. 2015) . . . . . 11, 15, 27

*Soto v. Castlerock Farming and Transport, Inc.*, 282 F.R.D. 492 (E.D. Cal. 2012) . . . . . 25

*Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739 (D. Md. 2008) . . . . . 28, 29

*T.B. v. United States*, No. 5:25-CV-00502, 2026 WL 2455352 (E.D.N.C. Aug. 21, 2026) . . . . . 28

*U.S. E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592 (2d Cir. 1999) . . . . . 26, 29

*United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404 (D. Md. 2005) . . . . . 19

*United States v. Biancofiori*, 94 F.4th 651 (7th Cir. 2024) . . . . . 22

*United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973) . . . . . 14, 15

*United States v. Jefferson*, 546 F.3d 300 (4th Cir. 2008) . . . . . 9

*United States v. Lazarro*, 129 F.4th 514 (8th Cir. 2025) . . . . . 22

*United States v. Mallas*, 762 F.2d 361 (4th Cir. 1985) . . . . . 22

*United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973) . . . . . 24

*United States v. Wisconsin Bell, Inc.*, No. 08-C-0724, 2020 WL 13048895 (E.D. Wis. Oct. 29, 2020) . . . . . 23

*Va. Dep't of Corrections v. Jordan*, 921 F.3d 180 (4th Cir. 2019) . . . . . 18, 19, 25

*Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999) . . . . . 28

*Voinche v. Fine*, 278 F. App'x 373 (5th Cir. 2008) . . . . . 26

*Wallace v. U.S. Senate Select Comm. on Ethics*, No. 1:14–cv–01931, 2014 WL 6439695 (D.D.C. Nov. 17, 2014) . . . . . 26

*Welch v. United States*, 409 F.3d 646 (4th Cir. 2005) . . . . . 27

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) . . . . . 19

**STATUTES**

15 U.S.C. § 45(a) . . . . . 1

15 U.S.C. § 45c(a) . . . . . 1

5 U.S.C. § 701(b)(1)(A) . . . . . 28

5 U.S.C. § 702 . . . . . 28

**CONSTITUTIONAL AUTHORITIES**

U.S. Const. art. I, § 6, cl. 1 . . . . . . . . . . 8

**RULES**

Fed. R. Civ. P. 45(d) . . . . . . . . . . 24

Fed. R. Civ. P. 45(d)(3)(A)(iv) . . . . . . . . . . 2, 18

Fed. R. Civ. P. 26(b)(1) . . . . . . . . . . 7

**CONGRESSIONAL MATERIALS**

*Fees Rolled on All Summer Long: Examining the Live Entertainment Industry: Hearing Before the Subcomm. on Consumer Protection, Technology, and Data Privacy of the Senate Comm. on Commerce, Science, and Transp.*, S. Hrg. 119-473, 119th Cong. (2026) . . . . . . . . . . 13

S. 196, 119th Cong. (2025) . . . . . . . . . . 13

S. 3191, 118th Cong. (2023) . . . . . . . . . . 13

**MISCELLANEOUS AUTHORITIES**

2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 48:20 (7th ed. 2012) . . . . . . . . . . 20

## INTRODUCTION

This discovery dispute arises out of the improper use of document subpoenas to root through constitutionally protected files of two United States Senators, not to adduce potentially relevant facts, as is the purpose of civil discovery, but in the hope of uncovering stray remarks by Senators and their staffs concerning the meaning and scope of a statute enacted a decade ago. Key Investment Group's goal is to persuade the Court to adopt their interpretation of the Better Online Ticket Sales Act ("BOTS Act" or "the Act")—one the Court has already rejected—and thereby defeat this enforcement action as a matter of law. The Court should reject this attempt to rummage through legislative materials for that impermissible purpose for three reasons. First, the Speech or Debate Clause of the Constitution absolutely bars compelled disclosure of these legislative materials; second, the materials sought have no bearing on the relevant facts needed to resolve this action; and third, sovereign immunity precludes enforcement of these subpoenas.

The Federal Trade Commission brought this action against Key Investment Group and other defendants (collectively "KIG") for alleged violations of the BOTS Act, 15 U.S.C. § 45c(a), and the FTC Act, 15 U.S.C. § 45(a). KIG moved to dismiss the FTC's complaint on several grounds, including that KIG did not violate the BOTS Act because the Act regulates only the use of bots in ticket transactions and was unconstitutionally vague if applied to activities that did not use bots. With the Court's leave granted, United States Senators Marsha Blackburn and Ben Ray Luján ("Senators") filed an amici curiae brief supporting the FTC's opposition to KIG's motion, addressing the purely legal issue of the interpretation of the BOTS Act.

This Court denied KIG's motion to dismiss, rejecting KIG's argument that its alleged activities were not covered by the BOTS Act. KIG then issued subpoenas to the Senators. The subpoenas seek no information about the facts of KIG's alleged activities; rather, they seek broad production of documents about the Senators' legislative activities, extending back a

decade, for purposes of arguing the purely legal question of whether the BOTS Act covers only the use of computer bots or applies more broadly.

After the Senators objected to the subpoenas pursuant to Rule 45, KIG "modified" its requests without meaningfully narrowing the scope of documents sought or demonstrating their relevance. The subpoenas, as modified, still demand from the Senators all materials, including any communication with any third party over the past 10 years, relating to the BOTS Act and its interpretation, defendants, or the Senators' amici brief.

KIG now moves to compel compliance with its subpoenas as modified. The Court should reject KIG's effort to invoke judicial power against U.S. Senators to pry into their legislative materials in order to support legal arguments regarding the interpretation of a federal statute. KIG's motion should be denied in its entirety. First, the subpoenas seek documents that are absolutely privileged under the Speech or Debate Clause, which protects Senators from being compelled to provide evidence of their activities, communications, or deliberations within the legislative sphere. *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416-21 (D.C. Cir. 1995). Second, the subpoenas present an undue burden, Fed. R. Civ. P. 45(d)(3)(A)(iv), because they request materials not relevant to the claims in this action, seek an overly broad scope of documents to probe into the private communications and deliberations of nonparty Senators and staff, and seek documents from nonparty Senators more appropriately sought, if at all, from a party. Third, the doctrine of sovereign immunity precludes enforcement, as KIG can identify no waiver of immunity "unequivocally expressed in statutory text," *Lane v. Pena*, 518 U.S. 187, 192 (1996), to allow it to compel production by the Senators.

Accordingly, the court should deny KIG's motion to compel in its entirety.

## BACKGROUND

### A. The FTC's Civil Action Against KIG

On August 18, 2025, the FTC brought this civil action against KIG asserting violation of section 2(a) of the BOTS Act and section 5(a) of the FTC Act. Compl. ¶¶ 1, 52-53, ECF No. 1. Specifically, the FTC alleges that KIG "obtained event tickets by circumventing a security measure, access control system, or other technological control or measure that Ticketmaster has used on its websites to enforce posted event ticket limits or to maintain the integrity of posted online ticket purchasing order rules . . . [and] subsequently sold or offered to sell in interstate commerce the tickets they have obtained in this manner," in violation of the BOTS Act. *Id.* ¶ 52.

On November 11, 2025, KIG moved to dismiss the FTC's complaint on several grounds. First, KIG argued that it did not violate the BOTS Act because: (a) the Act regulates only the use of bots (defined by KIG as "malicious computer code"), and the complaint does not allege that KIG used mechanisms that constitute bots in ticket transactions, KIG's Memo. of Law in Supp. of Mot. to Dismiss at 8-12, ECF No. 33-1, and, (b) KIG did not "circumvent[] a security measure, access control system, or other technological control or measure . . . used by the ticket issuer to enforce posted event ticket purchasing limits," in part because, KIG alleges, Ticketmaster knew of and permitted their activity. *Id.* at 12-15. Second, KIG asserted that it did not have actual or fairly implied knowledge that their activities violated the BOTS Act. *Id.* at 20-26. Third, KIG maintained that the BOTS Act is unconstitutionally vague as to them and other "non-Bots users." *Id.* at 26-28. Fourth, KIG argued that the FTC's interpretation of the BOTS Act violates the major questions doctrine. *Id.* at 28-30.

### B. Senators Blackburn and Luján Participate as Amici Curiae To Offer Legal Arguments in Support of the FTC's Opposition to the Motion to Dismiss

On December 31, 2025, Senators Blackburn and Luján moved to file an amici curiae

brief supporting the FTC's opposition to KIG's motion to dismiss. Mot. of Senators Blackburn and Luján for Leave to File Br. as Amici Curiae in Supp. of Pl.'s Opp. to Defs.' Mot. to Dismiss, ECF No. 35. The Senators proffered that their amici filing would "provide . . . useful legislative context" in interpreting the scope of the BOTS Act. *Id.* at 2. KIG opposed that motion, arguing their amici brief could not "clarify the legislative intent" as the House bill sponsored by then-Representative Blackburn did not become law (a companion Senate bill was enacted), and that then-Representative Luján was merely "one of 535 Members of the House" and not "mentioned in the legislative history of the BOTS Act[.]" Defs.' Memo. of Law in Opp. to Mot. for Leave to File Amici Curiae Br., ECF No. 50, at 3. Moreover, KIG asserted, "it is settled law that individual (or even collective) legislators cannot offer post-hoc rationales or explanations for a statute adopted a decade ago," as "'[p]ost-passage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage.'" *Id.* at 4 (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 132 (1974)). The Court granted the Senators' motion, finding the amici brief "relevant and helpful." ECF No. 54, at 5-6.

The Senators' amici brief addressed only the statutory interpretation question regarding the scope of the BOTS Act. The brief argued that the plain text of the Act applies to anyone who "circumvents a security measure, access control system or other technological control or measure" used by online ticket sellers to enforce purchasing limits or maintain the integrity of purchasing rules, and is not limited to persons who use bots. Nor do the Act's prohibitions depend on how vigorously an online ticket issuer enforces its policies. Br. of Amici Curiae Senators Blackburn and Luján in Supp. of FTC's Opp. to Defs.' Mot. to Dismiss ("Amici Brief"), ECF No. 56. at 3-8. Amici Senators further argued that, were the Court to consider legislative history, that history supported the interpretation that the Act was drafted "broadly to combat unfair ticket scalping," not the narrower reading KIG favors. *Id.* at 8-11. Finally, the

Amici explained that a more restricted reading would "allow ticket scalpers to end-run the law and harm ordinary consumers," citing various public sources in support. *Id.* at 12-14.

**C. The Court Denies KIG's Motion to Dismiss**

On April 28, 2026, the Court denied KIG's motion. *See* Apr. 28, 2026 Order, ECF No. 55; Memorandum Opinion ("Opinion"), ECF No. 54. The Court rejected KIG's argument that the BOTS Act was limited to the use of "bots," concluding that the statute's text applied more broadly to conduct circumventing security measures on online ticketing services. *Id.* at 8-9. While the Court explained that it "need not reach the text's legislative history to determine whether [the BOTS Act] exclusively applies to 'bots,'" it found that, even if it considered that history, "[t]he legislative history of the BOTS Act does not support a narrow reading as Defendants suggest." *Id.* at 10. The Court cited the Senators' Amici Brief in concluding that the legislative history did not bolster KIG's argument that the BOTS Act was limited to "bots." *Id.*

The Court also rejected KIG's arguments that ticket services' tolerance of KIG's circumvention negated its culpability, that the BOTS Act is unconstitutionally vague as to non-bot users, and that the BOTS Act violated the major questions doctrine. *Id.* at 10-13.

**D. KIG Issues Subpoenas to Senators Blackburn and Luján**

On July 1, 2026, KIG served subpoenas on Senators Blackburn and Luján seeking the production of 16 categories of records. In essence, those subpoenas sought: all documents and communications (a) "internal" to the Senators (presumably "internal" to their offices), (b) between the Senators, (c) between the Senators and the FTC, and/or (d) between the Senators and any third party, concerning: (1) Defendants (Requests 1-4); (2) the Amici Brief filed in this action or the Amici Brief filed by the Senators in a civil action pending in federal court in California filed by the FTC against Ticketmaster (Requests 5-10); (3) the BOTS Act, Requests 11-12; (4) the MAIN Event Ticketing Act (Requests 13-15); and (4) all documents and

communications between the Senators and Ticketmaster (Request 16). *See* Subpoenas to Senators Blackburn and Senator Luján, ECF No. 98-18, 98-19, Exs. 19 & 20.

On July 15, 2026, Senate Legal Counsel, on behalf of the Senators, sent a letter objecting to the subpoenas on the grounds that (a) the documents sought are absolutely protected from compelled production by the Speech or Debate Clause; (b) the subpoenas present an undue burden because they request materials that are not relevant to the claims or defenses in this action, seek an overly broad scope of documents, and seek documents from a nonparty that should be sought from a party; (c) their requests encompass documents and communications protected by the attorney-client privilege and work-product doctrine; and (d) the doctrine of sovereign immunity insulates the Senate and its Members from judicial enforcement of subpoenas in cases in which they are not a party, and the Senators have not been granted permission under the Standing Rules of the Senate to disclose Senate records, as required for production of nonpublic Senate records in a legal proceeding. *See* Letter from Vivian M. Rivera to Bezalel Stern, Esq., July 15, 2026, ECF No. 98-20, Ex. 21.

After a meet-and-confer, KIG's counsel offered to propose a "significantly narrow scope of what the subpoena sought" and an explanation of the requests' relevance to the suit. KIG's Memo. in Supp. of Mot. to Compel at 12, ECF No. 97-1 ("KIG Memo.")[1]. KIG's counsel sent modified requests as follows:

> **[Modified] Request No. 1**: All non-privileged Documents and Communications demonstrating Your understanding as to what constitutes "circumvent[ion]" under the BOTS Act.

[1] KIG's counsel claims that at the meet and confer KIG's counsel explained that "[a]ny change in view by the Senators as to how broadly the statute was to be enforced, then, would go directly to KIG's defenses. This much, the Senators' counsel did not dispute." KIG Memo. at 12 (citing Stern Decl. ¶ 25). To the contrary, counsel for the Senators maintained that none of the discovery sought by the subpoenas was relevant to the claims or defenses in the case.

> **[Modified] Request No. 2**: All non-privileged Documents and Communications concerning Your contention that "the BOTS Act was [not] confined solely to use of bot technology," as set forth on pages 2 through 6 of the Amicus Brief You filed in the Action.
>
> **[Modified] Request No. 3**: All non-privileged Documents and Communications showing any change in Your understanding or interpretation of the BOTS Act since its enactment.
>
> **[Modified] Request No. 4**: All non-privileged Documents and Communications between You and any third-party concerning the interpretation and enforcement of the BOTS Act.
>
> **[Modified] Request No. 5**: All non-privileged Documents and Communications between You and any third-party, including but not limited to the FTC, concerning Defendants.
>
> **[Modified] Request No. 6**: All non-privileged Documents and Communications between You and any third-party, including but not limited to the FTC, concerning the Amicus Brief You filed in the Action.

E-mail of Matthew Bruno, July 23, 2026, ECF No. 98-21, Ex. 22.

Senate counsel responded that the modified requests were not a significant narrowing, but remained broad in scope and time period. *See* E-mail of Vivian M. Rivera, July 29, 2026, ECF No. 98-21, Ex. 22. For instance, Modified Request 5 simply combines original Requests 2, 3, and 4, and Modified Request 6 combines original Requests 6 and 7. Moreover, the inclusion of "non-privileged" in the requests was not a narrowing of any kind as Rule 26(b)(1) already limits discovery to nonprivileged materials. *Id.* KIG then filed the instant motion to compel with the U.S. District Court for the District of Columbia, which transferred it to this Court.[2]

[2] For ease of reference, from this point forward in this memorandum, references to the "subpoenas" refers to the subpoenas as modified by KIG to the six requests above.

## ARGUMENT

### I. THE SPEECH OR DEBATE CLAUSE BARS COMPELLING SENATORS TO PRODUCE DOCUMENTS REGARDING MATTERS WITHIN THE LEGISLATIVE SPHERE

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The Clause's purpose "is to insure that the legislative function the Constitution allocates to Congress may be performed independently," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975), "without regard to the distractions of private civil litigation or the perils of criminal prosecution." *Brown & Williamson*, 62 F.3d 408, 415 (D.C. Cir. 1995); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) ("One of [the Clause's] purposes is to shield legislators from private civil actions that 'create a distraction and force Members to divert their time, energy, and attention from the legislative tasks to defend the litigation.' A litigant does not have to name members or their staffs as parties to a suit in order to distract therm from the legislative work. Discovery procedures can prove just as intrusive.") (quoting *Eastland*, 421 U.S. at 503).

To effectuate this independence, the Clause provides Members of Congress immunity from suit and a "non-disclosure privilege" that protects them "from being compelled to answer questions about legislative activity or produce legislative materials." *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013). Where it applies, this privilege provides Members absolute immunity from subpoenas for testimony, *Eastland*, 421 U.S. at 499 n.13, as well as for documents, *Brown & Williamson*, 62 F.3d at 421 ("A party is no more entitled to compel congressional testimony—or production of documents—than it is to sue congressmen."); *Minpeco*, 844 F.2d at 859; *see also In re Sealed Case*, 80 F.4th 355, 365 (D.C. Cir. 2023).

The Supreme Court has instructed that, because "the guarantees of [the Speech or Debate] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). And so, "[w]ithout exception," the Supreme Court has "read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501. Accordingly, the Supreme Court has held that the Clause provides absolute immunity not just for speech and debate in the Chambers of Congress, but for all actions "within the sphere of legitimate legislative activity," *id.* at 503, which encompasses "anything 'generally done in a session of the House by one of its members in relation to the business before it.'" *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)); *see also Gravel v. United States*, 408 U.S. 606, 625 (1972) (Clause precludes inquiry into "the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House"); *United States v. Jefferson*, 546 F.3d 300, 310 (4th Cir. 2008) ("Put simply, the Clause provides legislators with absolute immunity for their legislative activities[.]"). The Clause's privilege against compelled disclosure protects not merely documents that "reflect [congressional] deliberation," but rather, "any document that 'comes into the hands of congress[members]' by way of 'legislative acts' or the 'legitimate legislative sphere.'" *Musgrave v. Warner*, 104 F.4th 355, 364 (D.C. Cir. 2024) (quoting *Brown & Williamson*, 62 F.3d at 421).

Accordingly, when that privilege is raised in defense to a subpoena, the only question is whether the matters about which testimony or documents are sought "fall within the 'sphere of legitimate legislative activity.'" *Eastland*, 421 U.S. at 501. "[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an

*absolute* bar to interference." *Id.* at 503 (emphasis added); *see also Minpeco*, 844 F.2d at 862 ("Once the legislative act test is met, the principle is absolute.") (internal quotation marks and citation omitted).

### A. The Subpoenas Seek Categories of Records That are Protected From Compelled Disclosure by the Speech or Debate Clause.

The subpoenas seek to compel two Senators to produce materials they used, obtained, or created as part of their legislative activities. As modified, the subpoenas seek a broad range of documents from the Senators, from December 2016 to present, including: all documents and communications demonstrating the Senators' understanding of what constitutes "circumvention" under the BOTS Act (Modified Request 1); all documents and communications concerning the Senators' contention in the Amici Brief that "the BOTS Act was [not] confined solely to use of bot technology," (Modified Request 2); all documents and communications showing any change in the Senators' understanding or interpretation of the BOTS Act since enactment (Modified Request 3); and all documents and communications with any third party concerning the interpretation and enforcement of the BOTS Act (Modified Request 4).

The activities these Senators undertook and the communications they engaged in regarding the consideration, passage, and oversight of the implementation of the BOTS Act are integral parts of the deliberative and communicative processes in the legislative sphere that fall within the protection of the Clause. *See In re Sealed Case,* 80 F.4th at 371 (holding that "communications with Members and staff about legislation . . . were squarely 'legislative acts' within the meaning of *Gravel.*"); *see also Eastland*, 421 U.S. at 504 ("consideration and passage or rejection of proposed legislation" is "integral" to legislative activity). Similarly, the Senators' communications with the FTC, which administers the BOTS Act, entail oversight and information gathering to evaluate the need for potential further legislative action, and documents about such

communications are legislative materials protected by the Clause. *See SEC v. Comm. on Ways and Means*, 161 F. Supp. 3d 199, 237 (S.D.N.Y. 2015); *Jewish War Veterans of the U.S.A., Inc. v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007).

All documents and communications by these Senators, including communications both within the Senate and with outside persons and entities, to gather information in support of the consideration of and deliberation on legislation or on oversight and the need for further legislation, constitute legislative activities absolutely protected by the Speech or Debate Clause. *See Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985) ("fact-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation"); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the things generally done in a session of the House concerning matters within the legitimate legislative sphere[.]") (internal quotation marks and citations omitted).[3]

In *Brown & Williamson*, the D.C. Circuit affirmed on Speech or Debate Clause grounds the quashing of subpoenas *duces tecum* seeking to compel information from two Members of Congress regarding their legislative activities. In that case, documents allegedly stolen from a tobacco company were provided to two members of a House subcommittee. 62 F.3d at 412. The company, which was engaged in litigation, issued third-party subpoenas to the two Members for all company documents in their possession. *Id.* The D.C. Circuit held that, even if the

[3] The Supreme Court has long recognized the importance of Congress' authority to acquire information for legislative purposes. *See McGrain v. Daugherty*, 273 U.S. 135, 177 (1927) (Congress has authority to gather information on any subject about which it *may* legislate if it "would be materially aided by the information"); *Barenblatt v. United States*, 360 U.S. 109, 111 (1959) ("The power of inquiry has been employed by Congress throughout our history, over the whole range of the national interests concerning which Congress might legislate or decide upon due investigation not to legislate . . . ."); *see also Musgrave*, 104 F.4th at 363-64.

documents had been stolen and provided to Congress, the Members were protected by the Speech or Debate Clause and could not be compelled to produce the documents. *Id.* at 415-21.

KIG's subpoenas similarly seek to pry into protected legislative activities and compel disclosure of records documenting legislative activities. As in *Brown & Williamson*, these subpoenas substantially intrude into the Members' consideration and deliberation over legislation, including whether to propose, or amend existing, legislation in light of information regarding these subjects. *See id.* at 421; *Minpeco*, 844 F.2d at 859. And, just as in those cases, the Senators here are protected by the Clause's absolute privilege from compelled discovery. *See Brown & Williamson*, 62 F.3d at 423 ("B & W's claim at bottom, is to a right to engage in broad scale discovery of documents in a congressional file that comes from third parties. The Speech or Debate Clause bars this claim.").

**B. KIG's Arguments Provide No Basis for Vitiating the Senators' Constitutional Privilege.**

Failing to discuss these precedents, KIG instead argues that the Speech or Debate Clause does not bar the discovery it seeks for three reasons, each of which is based on erroneous distinctions about the Clause's scope.

First, KIG attempts to draw a distinction based on the date of the BOTS Act's enactment, asserting that the subpoenas seek only materials concerning the Senators' "post-enactment" activities and understanding of the BOTS Act, and thus fall "outside the legislative forum" protected by the Clause. KIG Memo. at 18; Modified Requests 1-3. But, as explained above, the Speech or Debate Clause "extends to protect all 'legislative acts,'" *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 991 (2021) (quoting *Doe v. McMillan*, 412 U.S. at 312), shielding from inquiry *all* actions "within the sphere of legitimate legislative activity," *Eastland*, 421 U.S. at 501. The relevant inquiry for Speech or Debate Clause purposes is whether the challenged

activity is legislative in character – *not* whether it occurred before or after enactment of any particular law.

Here, any activities the Senators engaged in after enactment of the BOTS Act as part of oversight of the law's implementation and collection of information to evaluate the need for further legislation—including, potentially amending the BOTS Act, providing more funding for FTC enforcement of the Act, or adjusting FTC's enforcement authority or procedures—are all part of the deliberative and communicative processes on potential legislation that fall within the legislative sphere. *See Brown & Williamson*, 62 F.3d at 423. In fact, since the BOTS Act's enactment, both Senators have pursued further legislative action in this area, in particular by introducing and co-sponsoring the MAIN Event Ticketing Act, in both the 118th and 119th Congresses, to amend the BOTS Act. *See* S. 3191, 118th Cong., 169 Cong. Rec. S5315 (daily ed. Nov. 1, 2023); S. 196, 119th Cong., 171 Cong. Rec. S302 (daily ed. Jan. 22, 2025); 171 Cong. Rec. S5563 (daily ed. Sept. 2, 2025) (reported to Senate by Senate Commerce Committee). In addition, Senator Blackburn, Chair of the Subcommittee on Consumer Protection, Technology, and Data Privacy (on which Senator Luján also serves), held a hearing on this subject. *See Fees Rolled on All Summer Long: Examining the Live Entertainment Industry: Hearing Before the Subcomm. on Consumer Protection, Technology, and Data Privacy of the Senate Comm. on Commerce, Science, and Transp.*, S. Hrg. 119-473, 119th Cong. (2026). Communications and documents of such legislative activity, occurring post-BOTS Act enactment, are equally part of deliberative and communicative legislative actions falling within the protection of the Clause.

KIG next seeks to avoid the Clause's absolute protections by arguing that it seeks discovery regarding "legislative purpose" and not "legislative motive," and that the latter, but not the former, is protected by the Speech or Debate Clause because discovery into "legislative

purpose does not invade the province of 'legislative acts.'" KIG Memo. at 18-19. This argument equally lacks merit. When an act by a Member of Congress has a "legislative purpose," that is, an act is taken in service of legislative matters, that act falls squarely within the "legitimate legislative sphere" and, contrary to KIG's assertion, *is* protected by the Clause. *See, e.g.*, *De la Torre v. Cassidy*, 185 F.4th 174, 181 (D.C. Cir. 2026) (noting "[Senate] Committee had a clear and legitimate legislative purpose" for its actions and finding Committee protected from suit by the Clause). KIG's effort to inquire into Members' activities that had a plain legislative purpose is similarly barred by the Clause. *See United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973).

None of the three district court cases KIG cites, KIG Memo. at 19, support its misguided attempt to distinguish between legislative purpose and motive. First, *N.Y. State Ass'n of Realtors, Inc. v. Shaffer*, 135 F.R.D. 78, 80 (S.D.N.Y. 1991), is inapposite as it did not address the Constitution's Speech or Debate Clause privilege at all, but rather involved assertion of a state-law based "governmental and deliberative process privilege[] . . . [that] purports to rely on the common law 'public interest' privilege acknowledged by the New York Court of Appeals." 135 F.R.D. at 79. *Glassroth v. Moore*, 229 F. Supp. 2d 1290, 1315-16 (M.D. Ala. 2002), similarly did not address the Clause.

Both *Glassroth* and *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007), were Establishment Clause challenges to governmental religious displays: in *Glassroth*, a challenge to the placement of a monument with the Ten Commandments in the Alabama State Judicial Building; in *Jewish War Veterans*, a challenge to the display of a Latin cross at a war memorial that had been owned by the City of San Diego but had been transferred to the federal government by law. In both cases, the courts recognized that the constitutional test for an Establishment Clause violation required courts to consider whether the purpose behind the governmental actions was secular and neither endorsed nor disapproved of religion, *see*

*Glassroth*, 229 F. Supp. 2d at 1293-97, 1315-17; *Jewish War Veterans*, 506 F. Supp. 2d at 43-46, but neither case permitted discovery into constitutionally-privileged legislative materials.

Third, KIG argues that the Senators are not protected from Modified Requests 4-6 because those requests seek only documents and communications "between the Senators, on the one hand, and ***third parties*** (whether the press, the executive branch, or other agencies) on the other." KIG Memo. at 19 (emphasis in original). This argument also fails. The question for Speech or Debate Clause purposes is not whether a communication was internal to Congress or between a Member and a party outside of Congress, but whether the communication was within the sphere of legislative activity. As explained above, all documents and communications by these Senators, including communications with outside persons and entities, that pertain to the consideration of and deliberation on potential legislation constitute legislative activities absolutely protected by the Speech or Debate Clause. Such activities may include discussions with federal agencies implementing a statute or with other outside sources as to the effects of a statute and the need for changes to remedy unaddressed problems. *See Dowdy*, 479 F.2d at 224 (concluding that evidence of "[defendant Congressman's] conversations and arrangements with the United States Attorney, and [government agencies] concerning" private company constituted "an examination of legislative acts" barred by the Clause); *Comm. on Ways and Means*, 161 F. Supp. 3d at 237 ("The Clause's protections also extend to a legislator's gathering of information from federal agencies and from lobbyists."); *Jewish War Veterans*, 506 F. Supp. 2d at 57 ("[A] Member's gathering of information beyond the formal investigative setting is protected by the Speech or Debate Clause so long as the information is acquired in connection with or in aid of an activity that qualifies as 'legislative' in nature."); *Lee*, 775 F.2d at 521; *Miller*, 709 F.2d at 530.

That the expansive scope of KIG's subpoenas may potentially sweep up some documents that may themselves, if read in isolation, not appear privileged, but whose compelled production

would intrude into the legislative process, does not remove the protections of the Speech or Debate Clause. For instance, the inclusion of legislative topics in materials used to communicate with the press does not diminish the applicability of the Clause's privilege to those underlying legislative materials. *See Pittston Coal Group, Inc. v. Int'l Union, United Mine Workers of Am.*, 894 F. Supp. 275, 278 n.5 (W.D. Va. 1995) (quashing subpoena for congressional staff testimony regarding "documents prepared to facilitate communications with the press," stating that, while "congressional staff may be required to testify as to the circumstances of an unprotected act, [they] may not be compelled to provide evidence that would compromise the protection extended by the Constitution to the legislative process itself") (citation and internal quotations omitted); *see also Minpeco*, 844 F.2d at 861 (rejecting argument that privilege protecting "preparation and publication of a congressional document" is "forfeit if its subsequent dissemination is not itself protected by the Speech or Debate Clause"). The fact a Member spoke about legislation in a press interview, for example, does not open the Member up to compelled questioning about the substance of the legislation the Member was addressing. *See Greenburg v. Collier*, 482 F. Supp. 200, 202-03 (E.D. Va. 1979) ("[P]laintiffs seek to establish more than the mere content of [state legislator's] press releases and speeches. . . . [P]laintiffs wish to establish [the legislator's] perception of the purpose of [Virginia] House Bill 1219. [The legislator's] perception of a bill's purpose necessarily implicates his motivation in supporting or opposing a proposed law. The question thus presented is whether [a legislator's] legislative motivation may be established through an inquiry into statements which are not protected by the speech or debate clause. . . . [T]he Court is of the opinion that this question must be answered in the negative.").

The D.C. Circuit in *Minpeco* rejected a similar use of third-party subpoenas to pry into congressional files. In *Minpeco*, defendants in a civil case issued third-party subpoenas to staff of a House subcommittee investigating speculation in the silver commodities market. *See* 844

F.2d at 858-59. As with the subpoenas here, the *Minpeco* defendants' subpoenas sought discovery into not only communications internal to the House but also external communications with, among others, the Department of Justice and other federal agencies with regulatory authority over the subjects of the investigation. *Id.* at 861-63. The D.C. Circuit unanimously affirmed the quashing of the subpoenas in their entirety on Speech or Debate Clause grounds, recognizing the serious incursion into legislative independence that the subpoenas threatened. The court of appeals found the subpoenas' requests for communications between the subcommittee and federal agencies was "in pursuit of an impermissible objective, namely, an inquiry into the manner in which the subcommittee had conducted its constitutionally protected legislative responsibilities." *Id.* at 862. Further, the court explained, while the "language of the subpoenas is broad enough to encompass documents beyond that[,]" and ones that might potentially not be privileged, the "effect of the literal enforcement would be to authorize a fishing expedition into congressional files." *Id.* at 862-63.

> For a court to authorize such open-ended discovery in the face of a claim of privilege and in the absence of any information to suggest the likely existence of nonprivileged information would appear inconsistent with the comity that should exist among the separate branches of the federal government . . . [and] with Supreme Court decisions that make clear that the Speech or Debate Clause, designed to preserve the independence and integrity of the Legislative Branch, is to be read broadly to effectuate its purposes.

*Id.* at 863 (internal quotation marks omitted and cleaned up).

The same result should obtain here. KIG's subpoenas seek to compel production of records documenting the Senators' legislative deliberations and communications for the purpose of adducing evidence about the meaning of the BOTS Act, matters which are purely legislative in nature. Just as the D.C. Circuit did in *Minpeco*, the Court here should reject KIG's attempt to rummage among the documents recording the Senators' legislative activities in furtherance of such "impermissible objective."

Further, just as in *Minpeco*, that KIG's broad requests might sweep in some stray documents not themselves clearly privileged cannot justify allowing such discovery into legislative files as that "would . . . be inconsistent" with the legislative independence that the Clause is meant to secure. *See Brown & Williamson*, 62 F.3d at 419, 423 (explaining that Clause "protect[s] . . . [Congress's] capacity to function effectively if beset by third-party discovery requests" and stating that the "Speech or Debate Clause bars" a "claim . . . to a right to engage in broad scale discovery of documents in a congressional file that comes from third parties").

Finally, KIG's suggestion that the Senators have forfeited or weakened their privilege under the Clause by "voluntarily insert[ing] themselves" into this case as amici, KIG Memo. at 1; *see also id.* at 2, 18-19, is wholly meritless. The Supreme Court has held that, in light of "the central importance of the Clause for preventing intrusion by [the] Executive and Judiciary into the legislative sphere," waiver by a Member of Congress of the Clause's protections, assuming such waiver is legally possible, can "be found only after explicit and unequivocal renunciation of the protection." *Helstoski*, 442 U.S. at 490-91. The Senators' filing of the Amici Brief does not waive or otherwise weaken their privilege over the legislative materials sought by the subpoenas.

KIG may seek support for its arguments about the interpretation of the BOTS Act and its defenses of unconstitutional vagueness and lack of notice from the Act's text itself or from public record sources of legislative history, but it cannot do so by compelled discovery of legislative materials from Members of Congress.

## II. THE SUBPOENAS SEEK MATERIALS NOT RELEVANT TO THE CLAIMS OR DEFENSES IN THE UNDERLYING ACTION AND PRESENT AN UNDUE BURDEN ON NONPARTY MEMBERS OF CONGRESS

KIG's motion to compel also should be denied because the subpoenas present an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). Undue burden is determined by factors such as relevance, the need for the documents, the breadth of the request, whether the requested information is

available from other sources, and the burden imposed. *See Va. Dep't of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (discussing undue burden factors and finding subpoena imposed undue burden on nonparty); *see also N.C. Right to Life v. Leake,* 231 F.R.D. 49, 51 (D.D.C. 2005) (same); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (relevance a factor in undue burden analysis). Moreover, "courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Va. Dep't of Corrections,* 921 F.3d at 189. KIG's subpoenas present an undue burden because they request irrelevant materials, seek an overly broad scope of documents, and request documents from a nonparty that should be sought, if at all, from a party.

### A. The Materials Sought by the Subpoenas Are Not Relevant to the Claims or Defenses at issue in the Underlying Action.

KIG's motion fails to show how the subpoenas' document requests are relevant to the claims or defenses in this action. Indeed, KIG makes no effort to articulate how the documents sought are relevant to KIG's alleged conduct that is the basis for the FTC's civil enforcement action. Instead, KIG argues that the subpoenas "principally seek" documents and communications reflecting the Senators' interpretation of the BOTS Act, KIG Memo. at 14, and these documents are "plainly," "clearly," and "highly" relevant to the statutory interpretation question and its "key defenses" of unconstitutional vagueness, lack of fair notice, and violation of equal protection by selective enforcement. *Id.* at 14-16. None of these arguments demonstrates the relevance of the requested materials to the claims or defense in this case.[4]

[4] KIG's discussion of relevance focuses solely on Modified Requests 1-4 and fails to address the relevance of, or even mention, Modified Requests 5 and 6, which seek all documents and communications between the Senators and any third party, including the FTC, concerning defendants (No. 5) and the amici brief (No. 6). KIG has failed to meet its burden to demonstrate in the first instance the relevance of these requests. *See United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 409 (D. Md. 2005) (requesting party has "obligation to demonstrate threshold relevance of discovery requests to its [claims] under applicable rules and case law").

First, even aside from the bar imposed by legislative privilege, the meaning of the BOTS Act cannot be ascertained by nonpublic statements of individual Members of Congress. *See Bread Pol. Action Comm. v. FEC*, 455 U.S. 577, 582 n.3 (1982) (courts do not "give probative weight" to statements that "represent only the personal views of th[is] legislato[r]"). Well-established canons of statutory construction look to the text and, in some cases, publicly-available legislative history preceding enactment, such as found in committee reports or floor statements. Indeed, as KIG has previously recognized, "statutory analysis cannot turn on post-enactment statements" of legislators, and "it is settled law that individual (or even collective) legislators cannot offer post-hoc rationales or explanations for a statute adopted a decade ago." Defs.' Memo. of Law in Opp. to Mot. for Leave to File Amici Curiae Brief at 4-5, ECF No. 50. Statutory interpretation presents question of law, and nonpublic, post-enactment legislative sources are simply inapposite. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history . . . is not a legitimate tool of statutory interpretation"); 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 48:20 (7th ed. 2012) ("[C]ourts generally have found that post-passage remarks by legislators, however explicit, cannot serve to change the legislative intent expressed before an act's passage."); *Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 350 (D.C. Cir. 2019) (declining to consider "a post-enactment letter signed by two senators" sent to agency because, "by definition, post-enactment statements of members of Congress are not even part of the legislative history"). Even post-enactment statements by the congressional sponsor of legislation are not relevant to the statutory interpretation question. *See Nat'l Veterans Legal Servs. Program v. United States*, 291 F. Supp. 3d 123, 142 (D.D.C. 2018).

The fact that the Senators filed an amici curiae brief cannot, as a matter of law, alter the irrelevance of the materials sought by the subpoenas to the purely legal question of statutory interpretation. Indeed, Members of Congress routinely file amicus briefs in all levels of the

federal courts on issues of statutory interpretation, *see e.g. Rise Economy v. Vought*, 823 F. Supp. 3d 1013 (N.D. Cal. 2026); *Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors*, 157 F.4th 1235 (10th Cir. 2025); *Moyle v. United States*, 603 U.S. 324 (2024) (Gorsuch, J., dissenting from dismissal of writ of certiorari) (noting that Court had received amici curiae briefs "expressing the views of 379 Members of Congress"), and such activity does not make their non-public communications and documents relevant or appropriate subjects for discovery. *See Am. Humanist Ass'n v. Md.-Nat'l Cap. Park & Planning Comm'n*, No. 14–0550, 2015 WL. 771645, at *2 (D. Md. Feb. 23, 2015) (quashing subpoena to amicus because plaintiff failed to "explain how any of the documents identified above that they seek from [amicus] relate to the parties' claims or defenses"); *N.C. Right to Life*, 231 F.R.D. at 51 ("[T]he mere filing of an amicus brief . . . does not open oneself to broad discovery demands.") (internal quotation marks and citations omitted). Similarly, that the Court's decision on KIG's motion to dismiss cited the Amici Brief, after first rejecting KIG's interpretation of the Act based on the statute's plain text, KIG Memo. at 15; *see* Opinion at 8-10, does not make relevant the records of Members of Congress sought by the subpoenas. Not surprisingly, KIG offers no legal support for its attempt to compel broad discovery from Members of Congress concerning the interpretation of the BOTS Act.

Failing to demonstrate any relevance of the materials to the Court's interpretation of the BOTS Act, KIG argues their discovery would be relevant to their other defenses, particularly that the law is unconstitutionally vague and fails to provide them fair notice of what it prohibits, and that the FTC's action against them was selective enforcement in violation of equal protection. Amici Senators did not address those issues. Just as with the statutory interpretation question, no discovery from the Senators is relevant to the questions of law raised by these defenses.

The Fourth Circuit has held that whether a statute is unconstitutionally vague presents a purely legal question. *See Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir.

2019) ("[T]he question of a statute's vagueness is a purely legal issue that does not require additional fact-finding[.]"); *see also United States v. Mallas*, 762 F.2d 361, 364 n.4 (4th Cir. 1985) ("The uncertainty of a tax law, like all questions of vagueness, is decided by the court as an issue of law."). Further, "[g]eneralized notions of Congressional intent do not impact the standard of conduct outlined in the text of the statute, regardless of the statements of individual legislators." *United States v. Lazarro*, 129 F.4th 514, 527 (8th Cir. 2025) (rejecting criminal defendant's argument that statute at issue was unconstitutionally vague based on statements of individual legislators). Indeed, legislative history and statements by legislators do not "render invalid an enacted text whose meaning is ascertainable." *United States v. Biancofiori*, 94 F.4th 651, 654 (7th Cir. 2024); *see also Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 457 (2002) (Senators' floor statements "cannot amend the clear and unambiguous language of a statute.") Since such information from the Senators cannot, as a matter of law, establish its defense of unconstitutional vagueness, it therefore cannot be relevant thereto.

KIG's contention that the subpoenas to the Senators are relevant to establish its affirmative defense that the "FTC failed to provide fair notice" is equally dubious. It is unclear how any discovery from the *Senators* of nonpublic communications and documents could establish whether the *FTC* provided fair notice to KIG. Further, when a "case involves ordinary judicial interpretation of a civil statute," as is the case here, the "relevant question is not whether [defendants] had fair notice of the FTC's *interpretation* of the statute, but whether [defendants] had fair notice of what the *statute itself* requires." *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 253-54 (3d Cir. 2015) (emphasis in original). This argument fails as a matter of law.

KIG's "lack of knowledge" arguments fare no better. KIG contends the information subpoenaed "goes directly" to its lack of knowledge affirmative defense and "could also defeat the FTC's efforts to seek civil penalties against KIG, since it would further demonstrate" KIG's

lack of knowledge that its actions violated the BOTS Act. KIG Memo. at 16. KIG fails to explain how nonpublic documents and communications that the Senators may have had concerning the interpretation of the BOTS Act, to which KIG was not privy, have any possible bearing on KIG's knowledge of whether its activities would violate the Act. *See United States v. Wisconsin Bell, Inc.*, No. 08-C-0724, 2020 WL 13048895, at *2 (E.D. Wis. Oct. 29, 2020) ("Internal and interagency communications cannot be relevant to whether [defendant]'s attempts to comply with the rule were reasonable or in good faith because [defendant] did not have access to them."); *S.E.C v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 668 (S.D. Fla. 2012) ("[U]nless [defendants] knew of the SEC's internal policies and investigations and relied upon them in [making disclosure decisions], [these materials] have no bearing on the issue of scienter. And only [defendants] – not the SEC – can identify what they relied upon in making disclosure decisions in this matter.")

Finally, as to KIG's selective enforcement defense, such a defense has two elements: "In the context of an equal protection selective enforcement claim, a plaintiff must show [1] that others similarly situated were not prosecuted and [2] that the prosecution was motivated by invidious discrimination. Invidious discrimination means taking an action 'because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1147 (D.C. Cir. 2023) (first internal citation omitted and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (cleaned up). KIG offers no explanation, and none except the most rank speculation could be offered, as to how the materials sought by the subpoenas could be relevant to those elements of that defense. Any discovery on such issues should be sought from the FTC itself, the agency that makes enforcement decisions, and not from nonparty Members of Congress.

Instead of proffering authority to support discovery from Senators, KIG cites to two cases, *BuzzFeed, Inc. v. U.S. Dep't of Justice,* 318 F. Supp. 3d 347 (D.D.C. 2018), and *Educ.*

*Fin. Council v. Oberg,* No. 10-mc-0079, 2010 WL 3719921 (D.D.C. Mar. 8, 2010), which are readily distinguishable and provide no basis for relevance here. The subpoenas in each case sought facts, not materials aimed solely at legal interpretation. *See BuzzFeed, Inc.*, 318 F. Supp. 3d at 352-53 (subpoenas of executive branch officials sought facts to prove existence of government proceedings relevant to a "fair report privilege" defense in a defamation action); *Educ. Fin. Council,* 2010 WL 3719921, at *1-*3 (subpoena sought factual evidence from trade group relevant to alleged scheme to submit false claims in False Claims Act *qui tam* case). In sum, KIG has failed to demonstrate that the materials sought by these subpoenas are relevant to any claim or defense in the action, and KIG's motion to compel should accordingly be denied.

### B. The Subpoenas Remain Overly Broad and Impose an Undue Burden on the Senators.

KIG's Modified Requests remain broad in scope and time period – they continue to demand all documents and communications, over a period of nearly 10 years, that the Senators or their staffs may have had with anyone in the world concerning the interpretation of the BOTS Act (Nos. 1-4), defendants (No. 5), and the amici brief filed in the underlying litigation (No. 6). Such broad discovery demands without any showing of relevance would raise undue burden concerns for any third party. *See* Fed. R. Civ. P. 45(d). These sweeping requests are particularly burdensome as they seek to probe into private communications and deliberations of Senators and their staff, *see Minpeco*, 844 F.2d at 859 (noting that "[d]iscovery procedures can prove just as intrusive" to Members and staff, and "distract them from their legislative work,"), and constitute an improper "fishing expedition into congressional files." *Id.* at 863. This Court should not enforce subpoenas seeking such a "rambling exploration of a third party's files." *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973).

KIG's so-called narrowing of its request to "nonprivileged" materials does not alleviate

the substantial burden of identifying and reviewing the broad scope of materials just to locate the few documents, if any, that may not be constitutionally privileged. Contrary to KIG's assertions, the undue burden has not been "obviated" by modification of the subpoenas. KIG Memo. at 22. Further, the subpoenas, even as modified, continue to seek documents and communications with the plaintiff FTC. *See* Modified Requests 3, 4. Assuming relevance, documents and communications with the FTC are available and more conveniently obtained from the FTC itself through party discovery. KIG's claim that the "FTC has in large part refused to provide" this information, KIG Memo. at 21, does not justify circumventing the ordinary discovery process nor shifting the burden to nonparty Members of Congress.[5] *See Va. Dep't of Corrections,* 921 F.3d at 189; *Soto v. Castlerock Farming and Transport, Inc*., 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests.").

The logic of KIG's claim of relevance is not limited to these two Senators, who filed an amicus brief in this case. There is nothing unique to these Members with regard to the issues here that would not be true of other Members of Congress in any case that raises similar legal issues. In other words, if the nonpublic documents and records of Senators Blackburn and Luján are relevant to the interpretation of the BOTS Act and to KIG's asserted defenses, then discovery of *any* of the 535 Members of Congress who sponsored, supported, or voted for or against legislation would be appropriate in *any* case – indeed, in *every* case – raising statutory interpretation questions or asserting these legal defenses. KIG points to no authority for such a sweeping and extraordinary proposition, and there is no basis to allow for such discovery here.

Given the lack of relevance of the materials, the alternative availability of information

---

[5] Indeed, KIG has filed three motions seeking to compel production of some of these documents from the FTC, ECF Nos. 84, 90, 91, which remain pending.

from a party, the intrusion into nonpublic documents and communications of nonparty Members of Congress, and the concerns that underlie the constitutional privilege protecting Members from such discovery, the burden imposed by these subpoenas far outweighs any possible illumination of the legal issues in the case.

## III. SOVEREIGN IMMUNITY PRECLUDES ENFORCEMENT OF THESE SUBPOENAS

Absent an express waiver, federal sovereign immunity shields the federal government from lawsuits or other judicial proceedings. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). This immunity also protects federal entities, as well as federal officials and employees sued or subpoenaed in their official capacities, as "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also COMSTAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 277 (4th Cir. 1999) ("[S]ubpoena proceedings fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign[.]") (quoting *Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989)); *U.S. E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999) (explaining that sovereign immunity bars enforcement of subpoenas "in the absence of a waiver") (internal quotation marks and citations omitted). As part of the federal government, Congress, its committees, and its Members and employees, when named in their official capacities in lawsuits or subpoenas, are covered by federal sovereign immunity. *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (affirming dismissal of suit against Senator and Representative on sovereign immunity grounds).[6]

---

[6] *See also McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009); *Danihel v. Off. of the President of the U.S.*, 616 F. App'x 467, 470 n.2 (3d Cir. 2015); *Voinche v. Fine*, 278 F. App'x 373 (5th Cir. 2008); *Liverman v. Comm. on the Judiciary, U.S. House of Representatives*, 51 F. App'x 825, 826 (10th Cir. 2002); *Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir.
(continued...)

Accordingly, a party seeking to enforce a subpoena against a federal entity or official, including a Member of Congress, bears the burden to establish affirmatively a waiver of federal sovereign immunity. *See Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (stating that "it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists"); *Anderson v. Gates*, 20 F. Supp. 3d 114, 127 (D.D.C. 2013). The Supreme Court has made clear that a waiver of sovereign immunity "must be unequivocally expressed in statutory text and will not be implied." *Lane*, 518 U.S. at 192 (internal citation omitted); *see also Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 802 (4th Cir. 2019) ("Sovereign immunity . . . can only be waived by statutory text that is unambiguous and unequivocal.").

KIG's subpoenas seek documents regarding the Senator's activities in the course of consideration and passage of legislation. Such actions fall within the official duties and activities of Members of Congress, and, thus, attempts to subpoena Members for documenting such activities seek to compel disclosure in their official capacities. Therefore, the Senators are protected from these subpoenas by sovereign immunity, unless KIG can identify a waiver of that immunity – a waiver "unequivocally expressed in statutory text" – applicable to these subpoenas. KIG cannot do so. Indeed, despite this objection being presented in the Senators' Rule 45 objection letter, KIG does not even attempt to address sovereign immunity in its motion.[7]

---

[6](...continued)
2001); *Wallace v. U.S. Senate Select Comm. on Ethics*, No. 1:14–cv–01931, 2014 WL 6439695 (D.D.C. Nov. 17, 2014); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam); *Comm. on Ways and Means*, 161 F. Supp. 3d at 217 n.5 (stating that "doctrine of sovereign immunity [] encompasses Congress and members of Congress acting in their official capacities").

[7] While KIG justifies not addressing directly the Senators' sovereign immunity objection by claiming that the objection has "overlapping principles and frameworks" with the Speech or Debate Clause privilege, KIG Memo. at 17 n.4, the two immunities are distinct: sovereign immunity is applicable to the federal government and all officials and components of the three branches, while Speech or Debate Clause immunity applies to the legislative activities of Members of Congress and their staff.

While the Fourth Circuit has identified a waiver of federal sovereign immunity for federal court subpoenas issued under Rule 45 against *federal agencies and agency officials* based on the waiver of sovereign immunity for non-monetary claims in the Administrative Procedure Act, 5 U.S.C. § 702 (waiving immunity for "[a]n action . . . seeking relief other than money damages" against "an agency or an officer or employee thereof"); *COMSAT Corp.*, 190 F.3d at 277, the APA's provisions do not apply to Congress. *See* 5 U.S.C. § 701(b)(1)(A) (defining "agency" for APA purposes as excluding "the Congress"); *see also Clark v. Libr. of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) ("[T]he Congress is not an 'agency' as defined under the [APA]."); *Rockefeller*, 234 F. App'x at 856 (APA sovereign immunity waiver not applicable to suit against Members of Congress); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 99-100 (D.D.C. 1999) (holding APA's waiver of sovereign immunity not applicable to Legislative Branch), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) (per curiam).

As the Fourth Circuit has specified, "it is sovereign immunity . . . that gives rise to the Government's power to refuse compliance with a subpoena[;] . . . The APA waives sovereign immunity and permits a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT Corp.*, 190 F.3d at 277; *see also Arista Records LLC v. Does 1-14*, No. 7:08cv00205, 2008 WL 5350246, at *5 & n.13 (W.D. Va. Dec. 22, 2008) (stating that "Fourth Circuit has found (as a threshold matter) that sovereign immunity applies to discovery requests made of non-party federal agencies," and that the "APA waived the sovereign immunity of an agency" to such subpoenas); *Attkisson v. United States*, No. 1:23-cv-01106, 2024 WL 3877599, at *1 (D. Md. Aug. 20, 2024); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 743 (D. Md. 2008) (citing *COMSAT Corp.*, 190 F.3d at 269, 277); *T.B. v. United States*, No. 5:25-CV-00502, 2026 WL 2455352, at *5 (E.D.N.C. Aug. 21, 2026) ("The default rule is that a private citizen is

not entitled to compel the federal government and its employees to participate in subpoena proceedings. The only reason this action may proceed at all is that the United States has partially waived its immunity through the APA, which provides the sole proper method for judicial review of the agency's final decision not to comply with a third-party subpoena.") (internal quotation marks and citation omitted).

Other circuits have likewise found the APA waiver to be the basis for enforcing nonparty federal subpoenas issued to Executive agencies. *See, e.g.*, *Linder v. Calero-Portocarrero*, 251 F.3d 178, 181 (D.C. Cir. 2001) (for subpoenas to nonparty Executive agencies, "the government has waived its sovereign immunity for actions 'seeking relief other than money damages' in [APA,] 5 U.S.C. § 702"); *Houston Business Journal v. Off. of the Comptroller of the Currency, U.S. Dep't of the Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) ("In federal court, the federal government has waived its sovereign immunity, see 5 U.S.C. § 702," to nonparty "federal subpoena[s]" "seek[ing] to obtain production of documents from a federal agency"); *U.S. E.P.A.*, 197 F.3d at 598 ("The rules governing discovery and the issuance of subpoenas duces tecum for the production of documents by third parties include no express waivers of the type necessary to subject the government to compulsion in judicial proceedings to which it is not a party. The *only* express waiver to be found in this regard is in the APA." (emphasis added)).[8]

Accordingly, the APA waiver of sovereign immunity, which is the basis for enforcing subpoenas against federal agencies and agency officials, has no application here. Therefore, as KIG cannot identify any waiver of the Senators' sovereign immunity—much less one

---

[8] While courts in this District have found that parties seeking to enforce Rule 45 subpoenas against federal agencies and officers do not have to file separate lawsuits under the APA and may instead simply move to compel under Rule 45 applying the APA arbitrary and capricious standard, *see, e.g.*, *Spence*, 530 F. Supp. 2d at 744, those issues neither affect nor are relevant to the antecedent question of sovereign immunity's application to Rule 45 subpoenas.

"unequivocally expressed in statutory text," *Lane*, 518 U.S. at 192—that would permit enforcement of subpoenas to Senators, the motion to compel should be denied.

**CONCLUSION**

For the foregoing reasons, KIG's motion to compel should be denied and the subpoenas should be quashed.

Respectfully submitted,

*/s/ Morgan J. Frankel*

Morgan J. Frankel
Senate Legal Counsel

Patricia Mack Bryan
Deputy Senate Legal Counsel

Thomas E. Caballero
Senior Assistant Senate Legal Counsel

Vivian M. Rivera
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)
morgan_frankel@legal.senate.gov
pat_bryan@legal.senate.gov
thomas_caballero@legal.senate.gov
vivian_rivera@legal.senate.gov

Dated: October 7, 2026

Attorneys for Subpoena-Respondents